# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

KEVIN TYRONE RUFFIN,

    *Petitioner*,

    2:07-cv-00721-RLH-PAL

vs.

    ORDER

DIRECTOR NEVADA DEPARTMENT
OF CORRECTIONS, *et al.*,

    *Respondents*.

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court for consideration of the exhaustion issues briefed in the answer (#53) and reply (#54).  In an effort to expedite a final resolution fo the case, the Court directed respondents to present any remaining procedural defenses in the answer together with their response on the merits. #52. The matter also is before the Court on petitioner's motion (#56) for decision.

### Background

Petitioner Kevin Ruffin seeks to set aside his September 28, 2005, amended Nevada state court judgment of conviction, pursuant to a jury verdict, of burglary and larceny from the person with an adjudication as a habitual criminal.  He is serving two concurrent life sentences with the possibility of parole after ten years.  The original judgment of conviction was filed on June 13, 2000.

The charges arose from two pickpocketing incidents in Las Vegas -- one on February 7, 1999, in an elevator at the Bellagio Hotel and Casino (the "Bellagio") and another on

1  February 18, 1999, in an elevator at the New York-New York Hotel and Casino (the "New

2  York-New York").  In the single trial, the jury hung on the Bellagio counts, and those counts

3  later were dismissed.  The jury found Ruffin guilty of the two counts arising from the New

4  York-New York incident.

5      Petitioner challenged the original June 13, 2000, judgment of conviction, sentence,

6  and/or habitual criminal adjudication on direct appeal, a post-judgment motion to modify

7  sentence, and a state post-conviction petition.  The Supreme Court of Nevada affirmed on

8  direct appeal.  On the appeal from the denial of the motion to modify sentence and the state

9  petition, the state supreme court affirmed in part and vacated and remanded the habitual

10  criminal adjudication.  The state supreme court vacated the habitual criminal adjudication and

11  sentence and remanded for a *de novo* resentencing proceeding because the state district

12  court clerk was not able to locate the exhibits from the prior sentencing.[1]

13      Following a *de novo* resentencing, an amended judgment of conviction was entered

14  on July 12, 2005, and thereafter was amended on September 28, 2005, to include credit for

15  time served.  The Supreme Court of Nevada affirmed on a second direct appeal, on April 6,

16  2007.  Petitioner thereafter proceeded to federal court without first pursuing any other state

17  judicial remedies subsequent to the second direct appeal.[2]

18                          ***Governing Law***

19      Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust his state court

20  remedies on a claim before presenting that claim to the federal courts.  To satisfy this

21  exhaustion requirement, the claim must have been fairly presented to the state courts

22  completely through to the highest court available, in this case the Supreme Court of Nevada.

23  *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329

24  F.3d 1069, 1075 (9th Cir. 2003).  In the state courts, the petitioner must refer to the specific

25  federal constitutional guarantee and also must state the facts that entitle the petitioner to relief

26  _____

27      [1]See #36-38, Exhs. 48, 69 & 110.

28      [2]See #38, Exhs. 125, 131 & 145.

on the federal constitutional claim.  *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000).  That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which his claim is based.  *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).  The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees.  *See,e.g., Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55, 115 L.Ed.2d 640 (1991).

Under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), a mixed petition presenting both exhausted and unexhausted claims must be dismissed without prejudice unless the petitioner dismisses the unexhausted claims or seeks other appropriate relief.

### *Discussion*

### *Ground 1: Batson Claim*

In Ground 1, petitioner presents a *Batson*[3] claim, alleging that the prosecution struck the sole black juror on the jury venire because of her race, denying petitioner, who also is black, equal protection of the laws in violation of the Fourteenth Amendment.

Under the jury selection procedure used in the state district court, the venire consisted initially of 35 prospective jurors, who were questioned by the court collectively.  The clerk thereafter called up 23 prospective jurors from the venire in a random and non-alphabetical order.  The venire members then were questioned individually in open court in the presence of the rest of the venire.  During both the collective and individual questioning, selected prospective jurors were excused for cause along the way based upon their responses.  After 23 prospective jurors had been individually questioned without being excused for cause, the State and the defense then exercised up to five peremptory challenges each.  The bailiff would hand the jury venire list to one side then the other, starting with the State, until each side had either exercised or waived five peremptory challenges.  The first 13 of the venire

---

[3]*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

1   members called, in the order called, who neither had been excused for cause nor were struck

2   by a peremptory challenge were seated as the jury and alternate.[4]

3       Ms. Avan Wilson was the sole African-American prospective juror in the venire.  She

4   was, in order, the fourth prospective juror called of those had been called but who had not

5   been excused for cause prior to the peremptory challenges.[5]

6       After the bailiff handed the jury list with the strikes up to the bench, the state district

7   court started reading the names of the prospective jurors who were being excused after the

8   peremptory challenges.  However, the court, apparently *sua sponte* as the transcript reads,

9   then stopped and recessed the proceeding for a conference in chambers.[6]

10      The following on-the-record exchange occurred in chambers:

11

12      THE COURT:    Okay.  Mr. Hehn [for the State], there is only one African-American prospective juror on

13          this panel and you have chosen to exercise a peremptory challenge on that.  I have to

14          have a non-racial reason or reasons – --

    MR. HEHN:    Sure.

15      THE COURT:    – – why you are challenging.

16      MR. HEHN:    Absolutely.   She stated, when she was

17          talking with Mr. Walton [for the defense], that his face was very familiar, that I felt as

18          though she laughed immaturely and inappropriately while he was talking with her,

19          which indicated to me that she was trying to kind of curry favor with him.  And also she

20          stated that she had a baby sitting problem immediately after 5 o'clock, and I felt as

21          though that would interfere with her ability to deliberate if we adjourned and they start

22          deliberating, which would maybe take them past 5 o'clock, she would just throw an

23          answer rather than actually deliberate.

24      THE COURT:    Okay.   Mr. Walton, I'm going to – I think

25  _____

26  [4]See,e.g., #35, Ex. 36, at 7-8, 13, 18, 21, 24 & 34; #36, Ex. 38, at 148-49.

27  [5]See #35, Ex. 36, at 45-50.

28  [6]See #35, Ex. 36, at 149.

-4-

<table>
<tr><td>1</td><td></td><td>those are legitimate reasons and for those reasons I'm not going to preclude him from challenging her. You may put anything on the record that you wish.</td></tr>
</table>

|   |   |   |
|---|---|---|
| 1 |  | those are legitimate reasons and for those reasons I'm not going to preclude him from challenging her.  You may put anything on the record that you wish. |
| 2 |  |  |
| 3 | MR. WALTON: | Yes, Judge.  I declare for the record that that's not a sufficient race-neutral for [sic] reason for excluding the only prospective black panel member and I'd like my objection to be noted for the record. |
| 4 |  |  |
| 5 |  |  |
| 6 | THE COURT: | They are noted for the record.  Thank you very much.  That will be it. |
| 7 |  |  |

8  #36, Ex. 38, at 149-50.

9      The foregoing was the entirety of the argument presented in the state district court on

10  the *Batson* issue, which appears from the transcript to have been raised *sua sponte* by the

11  court rather than initially by the defense.  Other than the conclusory statement that the State

12  had not given a sufficient race-neutral reason, the defense did not specifically challenge the

13  factual assertions made by the State.  Nor did the defense seek to argue that other facts

14  demonstrated that the reasons given by the State were merely pretextual.

15      The state district court thereupon reconvened the matter, excused the rest of the struck

16  prospective jurors, and had the jury sworn.  Avan Wilson was the second prospective juror

17  of the 23 called – vis-à-vis the order in which they were called by the clerk – who was struck

18  by a party.[7]  The record does not reflect which side struck which prospective jurors other than

19  Wilson.  Nor does the record reflect the order in which the prospective jurors were struck as

20  the list was passed back and forth between the State and defense.  For example, the record

21  does not reflect whether the State struck Wilson with its first, last, or an intermediate

22  peremptory challenge.  There is no suggestion in the record that counsel were required to go

23  down the jury list in order when exercising their peremptory challenges.

24      On direct appeal, petitioner alleged that the State's exercise of a peremptory challenge

25  as to prospective juror Wilson deprived him of equal protection of the laws pursuant to

26

27  _____

28  [7]The only other prospective juror who was struck who preceded Wilson in the order that the 23 were called by the clerk was Joanne Silvernail. Compare #35, Ex. 36, at 36-40, with #36, Ex. 38, at 149.

*Batson*.  Petitioner contended that the State's explanation for the strike did not present an adequate race-neutral explanation.  Petitioner argued specifically:

> Not liking how a prospective juror laughed and resorting to the non-issue of the trial going past five o'clock (which the trial judge had indicated would not happen) were nothing more than pretextual excuses for eliminating the only African-American from the jury.

#36. Ex. 61, at 8-9.

Petitioner presented no other factual basis in his direct appeal brief for concluding that the State's reasons were inadequate.  The claim presented was rejected on the merits.[8]

On federal habeas review, petitioner, among other arguments, maintained for the first time that the State's reliance upon Wilson's baby sitting issue was pretextual because the State had not struck two other prospective jurors who had allegedly similar scheduling issues. The other two jurors were: (1) Lisa Scarpati, who was the prospective juror called by the clerk immediately after Wilson and the third juror on the jury in that order; and (2) Diane Hill, who was the sixteenth remaining prospective juror in the order called by the clerk who had not been excused for cause and the ninth juror on the jury in that order.[9]  Both Scarpati and Hill were seated on the jury.  In federal court, Ruffin has sought to establish that the State's reliance upon the baby sitting issue was pretextual by undertaking what the parties have described as a comparative analysis of the answers given by the struck Wilson to the answers given by Scarpati and Hill, who were not struck by either party.

Respondents contend that the claim presented in the second amended petition is not fully exhausted because petitioner presents this comparative analysis that was not presented to the state supreme court in the direct appeal briefing.  That is, in Ground 1, petitioner compares *voir dire* responses by the black juror upon which the State relied in its explanation

---

[8]#37, Ex. 69, at 1-2.

[9]The alternate was selected from among the thirteen through an essentially random process.  See #36, Ex. 38, at 152.  In Ruffin's case, the seventh juror of the final thirteen was selected as the alternate.  Hill is listed as the tenth juror on the final jury list. #35, Ex. 37.  However, Hill was the ninth of the jurors excluding the alternate.

for striking the juror to allegedly similar responses by non-minority jurors who were not struck by the State.  Respondents contend that petitioner's reliance upon this comparative analysis in Ground 1 renders the claim as presented on federal review unexhausted.

The question is a debatable one.  However, at bottom, the Court is not persuaded that the additional factual argument provided by petitioner on federal habeas review – directed to the same record that was before the state courts – renders the claim unexhausted.  Reliance upon additional factual material that does not fundamentally alter the legal claim considered by the state courts does not render a claim unexhausted.  *See,e.g., Vasquez v. Hillery*, 474 U.S. 254, 260, 106 S.Ct. 617, 621-22, 88 L.Ed.2d 598 (1986); *Lopez v. Schriro*, 491 F.3d 1029, 1040 (9th Cir. 2007).  The Court has concerns as to conducting AEDPA review of a state court merits adjudication based upon factual arguments that were not presented to the state courts, particularly as to a *Batson* claim.[10]  However, the Court holds under current precedent that the claim is exhausted.

Ground 1 therefore is exhausted.

### Ground 2: Effective Assistance of Trial Counsel – Voir Dire

In Ground 2, petitioner alleges in the main[11] that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments when trial counsel failed to object during voir dire to the state trial court's reference to petitioner's alias.

_____

[10]A substantial tension exists between the pre-AEDPA exhaustion holding in *Vasquez v. Hillery* and the Supreme Court's recent AEDPA holding in *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), that review of a merits determination by a state court is restricted to the record before the state courts.  That is, new evidence might not render a federal claim unexhausted under *Vasquez v. Hillery*, but the federal court nonetheless would be precluded from considering the new evidence under *Cullen v. Pinholster* in applying 28 U.S.C. § 2254(d).  In this instance, Ground 1 is based upon facts that were in the state court record when the *Batson* claim was adjudicated by the state courts on the merits.  Following *Cullen v. Pinholster*, a question remains as to whether AEDPA review allows the federal court to consider factual arguments not presented to the state courts even based upon the existing state court record.  However, the situation presented here at least is not one where new evidence is being presented for the first time in federal court that was not even present in the state record.  *See also Haney v. Adams*, ___ F.3d ___, 2011 WL 2040962 (9th Cir., May 26, 2011)(requiring contemporaneous *Batson* objection so that, *inter alia*, the prosecutor may respond based upon his current perceptions and the trial judge can evaluate the prosecutor's demeanor and credibility similarly based upon the judge's current perceptions).

[11]The allegation that petitioner was denied due process under the Fifth Amendment is surplusage.

1     The state district court asked the venire at the beginning of voir dire whether they were

2     acquainted with "the Defendant, Kevin Tyrone Ruffin, also known as Michael Simmons."

3     Prospective juror Vicky Wells thereafter expressed a concern – during the individual

4     questioning before the entire venire -- that she would not be able to put out of her mind the

5     fact that Ruffin had an alias.  She stated that "I only know of one reason why someone would

6     have an alias."  After a series of questions seeking to determine whether she could put the

7     matter of the alias out of her mind as a juror, the state trial court excused Wells.  Thereafter,

8     at the very end of the day when the court was releasing the venire until the next morning,

9     prospective juror Cindy Joseph echoed Wells' concern as to the alias.  Joseph had not been

10    individually questioned prior to that point.  After determining that Joseph also was unable to

11    put the matter out of her mind as a juror, the court excused Joseph.[12]

12    When petitioner presented an at least related claim[13] of ineffective assistance of trial

13    counsel in the state courts, he pointed only to the statements by prospective juror Wells and

14    not those of prospective juror Joseph in seeking to demonstrate prejudice.[14]  On federal

15    habeas review, he relies upon the statements of both Wells and Joseph in order to establish

16    prejudice.

17    As with the discussion above of Ground 1, the Court is not persuaded that the

18    additional factual argument provided by petitioner on federal habeas review – directed to the

19    same record that was before the state courts – fundamentally alters the claim that was

20    exhausted.  While the Court similarly has concerns about conducting AEDPA review of a

21    claim based upon a factual argument not presented to the state courts, the Court holds under

22    current precedent that the claim is exhausted.

23    Ground 2 therefore is exhausted.

24

25        [12]#35, Ex. 36, at 5, 72-74 & 99-100.

26

27        [13]Respondents' exhaustion objection is directed only to the fact that petitioner refers also to Joseph on federal habeas review.

28        [14]#37, Ex. 82, at 5-7.

-8-

***Ground 3: Effective Assistance – Bellagio Videotape Testimony***

In Ground 3, petitioner alleges in the main[15] that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments when trial counsel failed to object to references in the State's opening statement, witness testimony and closing argument to a videotape from the Bellagio that was ruled inadmissible late in the trial.[16]

Ruffin claimed in state court that counsel was ineffective for failing to object to the testimony of witnesses who referred to the tape that later was ruled inadmissible.[17]

Respondents contend that Ground 3 is not exhausted to the extent that petitioner bases the ground on claims that counsel was ineffective for failing to object to the references to the videotape in the State's opening statement and closing argument.  Petitioner relies again on *Vasquez v. Hillery, supra,* for the proposition that the additional allegations do not fundamentally alter the legal claim presented to the state courts.

Here, the Court is persuaded that petitioner's assertion of the additional claims does more than merely provide additional factual allegations that do not fundamentally alter the legal claim presented to the state courts.  Claims that trial counsel should have objected to opening statements and closing argument are different claims from a claim that trial counsel should have objected to testimony.  Moreover, petitioner maintains in the second amended petition that trial counsel should have objected to what is alleged to be "prosecutorial misconduct" by the State in its opening statement and closing argument.[18]  Clearly, petitioner has fundamentally altered the legal claim presented to the state courts.

Ground 3 therefore is not exhausted to the extent that petitioner alleges that he was denied effective assistance of counsel when trial counsel failed to object to references in the State's opening statement and closing argument about the Bellagio videotape.

---

[15]See note 11, *supra.*

[16]#49, at 17-20.

[17]#37, Ex. 82, at 13-15.

[18]#49, at 19, line 9.

***Ground 4: Admission of Bellagio Evidence***

In Ground 4, petitioner alleges that he was denied rights to due process and a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments when evidence about the Bellagio incident was introduced, as it allegedly constituted improper propensity evidence as to a crime that the State was unable to prove was committed by Ruffin.[19]

Respondents contend that Ground 4 is not exhausted because, *inter alia*, petitioner did not fairly present a federal constitutional claim on direct appeal.

In the claim presented on direct appeal, petitioner neither articulated federal constitutional doctrine supporting a federal claim nor cited case law applying a legal analysis for a federal constitutional claim. Petitioner instead argued that the trial court committed prejudicial error in handling a jury inquiry about the Bellagio evidence during deliberations. In the concluding paragraph, petitioner asserted that the court's action "amounted to an abuse of discretion and deprived Defendant of his right to a fair trial under the due process clause of the Fifth Amendment to the United States Constitution."[20]  Such conclusory references to "due process" and a "right to a fair trial," detached from any articulated federal legal theory or citation to apposite cases applying a federal constitutional legal analysis, are not sufficient to fairly present a constitutional claim, including a claim under the Due Process Clause.[21]  Any federal claim corresponding to Ground 4 clearly was not exhausted on direct appeal.

Petitioner further urges that an ineffective assistance claim and a cumulative error claim presented on state post-conviction review exhausted the independent substantive

---

[19]#49, at 20-22.

[20]#36, Ex. 61, at 9-14.

[21]*See, e.g., Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005)(mention of the "federal Constitution" and "due process" did not exhaust a claim, *inter alia*, that the trial court violated petitioner's federal Fourteenth Amendment right to due process by failing to provide him personally with a copy of an amended information); *Castillo*, 399 F.3d at 999-1002 (statement that improper admission of evidence denied petitioner a fair trial in violation of the United States Constitution and blanket concluding statement in brief that alleged gross violations of petitioner's Fifth, Sixth, and Fourteenth Amendment rights required a new trial consistent with due process of law did not exhaust claim that trial court denied petitioner due process by admitting videotaped interrogation); *Shumway*, 223 F.3d at 987 (naked reference to "due process" did not exhaust claim that redaction of portions of statement to police violated petitioner's right to due process).

1    claims in Ground 4.  However, petitioner identified only the direct appeal brief as the basis for

2    exhaustion of Ground 4 in the second amended petition.[22]  Petitioner may not "sandbag"

3    respondents by raising a different basis for exhaustion of a ground in the reply, and further

4    amendment of the petition instead would be required.  Any such amendment would be futile

5    in this case.  Neither a claim of ineffective assistance of counsel nor a cumulative error claim

6    exhausts an underlying independent substantive claim.  Petitioner never presented the

7    independent substantive claims in Ground 4 as independent substantive claims based upon

8    federal constitutional law.

9            Ground 4 therefore is not exhausted.[23]

10   **_Ground 5: Effective Assistance – Identification Testimony_**

11            In Ground 5, petitioner alleges in the main[24] that he was denied effective assistance

12   of counsel in violation of the Sixth and Fourteenth Amendments when trial counsel failed to

13   object to allegedly unreliable identification testimony by State witnesses Diana Stubenrauch,

14   Dan Smolinski, and Dolores Harris.

15            Respondents contend that Ground 5 is not exhausted because, _inter alia_, petitioner did

16   not present claims to the state courts that trial counsel was ineffective for failing to object to

17   the identification testimony of State witnesses Smolinski and Harris.

18            Indisputably, the claim that petitioner presented in state court was based exclusively

19   upon alleged unreliable identification testimony by Stubenrauch.  The counseled state post-

20   conviction petition discusses only Stubenrauch's identification testimony.  #37, Ex. 82, at 4-5.

21

---

22        [22]#49, at 20, lines 11-13.

23

24        [23]The Court further is not persuaded that all aspects of Ground 4 – _i.e.,_ the same legal claims – were
     fairly presented to the state courts on direct appeal.  Petitioner has not merely supplied additional factual
     allegations but has fundamentally altered the claim presented to the state courts.  In any event, even if

25   Ground 4 had been fully exhausted and adjudicated on the merits by the state courts, the claims therein
     would face a steep uphill struggle on AEDPA review.  _See Alberni v. McDaniel_, 458 F.3d 860 (9th Cir. 2006)

26   (state court determination that due process was not violated by the introduction of propensity evidence was
     not an objectively unreasonable application of clearly established federal law at the time of the state court

27   decision, given that the Supreme Court had expressly reserved the issue_)._

28        [24]See note 11, _supra._

-11-

1    Federal habeas counsel focuses instead, however, not upon the factual basis
2    presented to the state courts but instead on the listing of the claim in the table of contents and
3    in the subject heading for the claim.  The table of contents refers to "Failure to File Pretrial
4    Motions" and, under that heading, "Motion for Lineup or in Alternative to Suppress Suggestive
5    Identification of Petitioner."  The subject heading – which immediately precedes factual and
6    legal argument discussing *Stubenrauch's* identification testimony – similarly states: "Motion
7    for Lineup or in the Alternative to Suppress the Suggestive Identification of Petitioner."
8    Counsel urges that this topic listing and subject heading "presented a broader claim" and
9    "could be fairly understood to encompass any of the suggestive identifications that were
10   introduced against Ruffin at his trial."[25]

11   This argument is frivolous.  It is established law that the petitioner must present both
12   the federal legal theory and the operative facts upon which his claim is based to fairly exhaust
13   the claim.  *Castillo, supra*.  A generic table of contents listing and a generic subject heading
14   present no operative facts.  The only operative facts presented by petitioner – immediately
15   after the above-referenced subject heading – concerned Stubenrauch's identification
16   testimony and not that of any other witness.  It is beyond any rational dispute that petitioner
17   did not exhaust claims that trial counsel was ineffective for failing to challenge identification
18   testimony by Smolinski and Harris.

19   Petitioner further urges that the state courts considered a broader claim when they
20   described the claim that they were rejecting in generic terms.  The Supreme Court of Nevada,
21   for example, listed a number of claims that it was denying, stating: "In his petition, Ruffin also
22   contended that his trial counsel was ineffective for failing: (1) to file a number of different
23   pretrial motions, including motions to suppress in-court identification of appellant . . . ."[26]  This
24   argument is frivolous as well.  The state supreme court was referring to the claims petitioner
25   presented "[i]n his petition," which included no claims alleging that trial counsel was ineffective

26   _____

27   [25]#54, at 32.

28   [26]#38, Ex. 110, at 4.

1   for failing to challenge identification testimony by Smolinski and Harris.  The state courts are

2   not required to repeat every jot and tittle of the entire state petition in describing the claims

3   that are being rejected at the risk of expanding petitioner's claims if they instead use generic

4   language when referring to the claims being denied.  Petitioner's argument is frivolous.

5        Also frivolous is the argument that the claims are exhausted because Ruffin referred

6   to the Smolinski identification in connection with a claim that counsel was ineffective for failing

7   to investigate a convenience store videotape.  Petitioner must present *both* the federal legal

8   theory and the operative facts supporting each claim.  Ruffin did not present the legal theory

9   that counsel was ineffective for failing to challenge identification testimony together with the

10  facts of Smolinski's identification in the same claim.  The exhaustion requirement is not

11  satisfied in a mix-and-match, smorgasbord fashion.  Fair presentation demands that the state

12  courts be presented with the same legal claims based on the same facts.

13       Presenting claims that counsel was ineffective for not challenging identification

14  testimony by Smolinski and Harris fundamentally alters the claim presented to the state

15  courts.  It is one thing to add allegations pertaining to the identification testimony of

16  Stubenrauch, which constituted the operative facts presented to the state courts as to this

17  claim.  It is quite another to present allegations regarding identification testimony by entirely

18  different witnesses not argued to the state courts as to this claim.  Ruffin gave the state courts

19  fair notice that he was claiming ineffective assistance only based upon the failure to challenge

20  Stubenrauch's identification testimony.

21       Ground 5 therefore is unexhausted to the extent that petitioner claims that counsel was

22  ineffective for failing to challenge the identification testimony of Smolinski and Harris.

23       Ground 5 also is unexhausted to the extent that petitioner claims that counsel was

24  ineffective for failing to object to Stubenrauch's testimony identifying Ruffin in the surveillance

25  videotape as inadmissible lay opinion.[27]  Petitioner has not responded to respondents'

26  argument in this regard and has not demonstrated that this distinct legal claim was exhausted.

27

28      [27]#49, at 24, lines 10-15.

-13-

### Ground 6: Effective Assistance – Circle K Videotape

In Ground 6, petitioner alleges in the main[28] that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments when trial counsel failed to object to conduct any pretrial investigation regarding the Circle K videotape.  According to the pleadings, the convenience store manager, Dan Smolinski, testified that, after a charge was made on the New York-New York victim's credit card at his store, he reviewed a surveillance videotape alleged to be of the transaction.  He testified that he recognized Ruffin on the videotape from prior visits to the store.  Smolinski testified that he gave the videotape to the police.  In the second amended petition, petitioner alleges that responses to federal discovery demonstrate that the police never obtained such a videotape.  He thus alleges for the first time that pretrial investigation would have revealed that the videotape never existed and that Smolinski's associated testimony thus could have been excluded at trial based upon this fact.

In the state petition, Ruffin alleged that he was denied effective assistance of counsel because trial counsel "did not take steps to prevent or minimize the harmful effects of the introduction of testimony surrounding the Circle K video by failing to compel discovery prior to trial, and/or upon inaction by the District Attorney's office, failing to move for dismissal based on the non-production or disappearance of this critical evidence."  Based on the trial testimony of Smolinski and Detective Carolyn Wolfe, petitioner alleged that the videotape initially had been provided to the police.  Based on the inability of the State to produce the tape based upon a post-trial, pre-sentencing subpoena, petitioner alleged that the tape thereafter had been lost.  Petitioner accordingly contended that if trial counsel had "adequately prepared and litigated the issue," he could have obtained a ruling that the evidence must be presumed to be unfavorable to the State.  #37, Ex. 82, at 7-10.

Respondents contend that federal Ground 6 is unexhausted because: (1) Ruffin "now relies on 'new' evidence which was never presented to the state courts;" and (2) petitioner's

---

[28]See note 11 *supra*.  The same point applies to the allegation that the ineffective assistance of counsel deprived petitioner of his right to a fair trial.  Such surplusage is unnecessary and arguably tends to invite a challenge to the exhaustion of the "right to a fair trial" legal theory.

1  claim in the state court was that counsel failed "to seek dismissal or an instruction that lost

2  evidence was favorable to the defendant" but now claims "that the videotape never existed

3  and that pre-trial investigation would have revealed that fact."[29]

4       The exhaustion issue as to Ground 6 is a close one, particularly after the Supreme

5  Court's intervening decision in *Cullen v. Pinholster,* 131 S.Ct. 1388 (2011).

6       As the Court noted above in the discussion as to Ground 1, substantial tension exists

7  between the pre-AEDPA exhaustion holding in *Vasquez v. Hillery, supra,* and the Supreme

8  Court's recent AEDPA decision in *Cullen v. Pinholster*.  In *Vasquez v. Hillery*, the Court held

9  that new facts that do not fundamentally alter a claim do not render the claim unexhausted.

10  In *Cullen v. Pinholster*, the Court held that review of a merits determination by a state court

11  is restricted to the record before the state courts, so long as the state court decision is entitled

12  to deference under the 28 U.S.C. § 2254(d) standard of review.  Accordingly, if the pre-

13  AEDPA holding in *Vasquez v. Hillery* remains good law, new evidence potentially might not

14  render a federal claim unexhausted, yet the federal court would be precluded from

15  considering the new evidence under *Cullen v. Pinholster* when applying 28 U.S.C. § 2254(d).

16       The Ninth Circuit reaffirmed its adherence to the rule in *Vasquez v. Hillery* in, *inter alia,*

17  its *en banc* decision in *Pinholster v. Ayers*, 590 F.3d 964 (9th Cir. 2009), which was overturned

18  on the merits in *Cullen v. Pinholster*.  See 590 F.3d at 669.  The Supreme Court did not

19  reach, much less overturn, the *en banc* court's holding on the exhaustion issue.  See 131

20  S.Ct. at 1402 n.11.  It thus would appear that, for the present, the Ninth Circuit's post-AEDPA

21  reliance upon the rule in *Vasquez v. Hillery* remains good law within the Circuit.

22       The Ninth Circuit's *en banc* decision in *Pinholster* relied upon the prior Ninth Circuit

23  decision in *Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  *Pinholster* cited *Weaver* for

24  the proposition that, under the rule stated in *Vasquez v. Hillery*, the federal court should not

---

26    [29]#53, at 46-47.  Petitioner maintains that respondents concede that Ground 6 is exhausted except
27  for the fact that Ruffin now relies on new evidence. #54, at 43.  Respondent do indeed start their argument
    with the statement that the claim "would be exhausted except for" the fact that Ruffin relies on new evidence.
    #53, at 45.  Respondents ultimately, however, argue further that the legal claim presented in federal court is
28  not the same claim as the claim that was presented in state court.  See #53, at 46-47.

1  engage in "unwarranted hairsplitting" where the legal claim remained the same but the precise

2  factual predicate changed after factual development in federal court.  590 F.3d at 669.  In

3  *Weaver*, the petitioner asserted a claim of bailiff misconduct in the state courts, based upon

4  the allegation that the bailiff told the jury that it could not adjourn for the night without reaching

5  a verdict.  After a federal evidentiary hearing, the district court found that the bailiff engaged

6  in misconduct by instead telling the jury that it needed to reach a verdict on all counts.  The

7  Ninth Circuit rejected the respondents' exhaustion argument as "unwarranted hairsplitting"

8  given that the petitioner had argued that he was subjected to bailiff misconduct that had a

9  coercive impact upon the jury deliberations.

10        Similarly, in the present case, petitioner has claimed – consistently throughout – that

11  if trial counsel had pursued the matter of the Circle K videotape before trial, he would have

12  been able to limit or eliminate the impact of Smolinski's associated testimony.  While the

13  question is a close one, the Court accordingly holds that Ground 6 is exhausted.  The new

14  evidence may be considered on federal habeas review, however, only if the state court's

15  rejection of the corresponding claim was either contrary to or an unreasonable application of

16  clearly established federal law or was based upon an unreasonable determination of fact in

17  light of the evidence before the state courts.  *Cullen v. Pinholster, supra*.  For the moment,

18  the Court leaves that determination to another, albeit not very distant, day.[30]

19        Ground 6 therefore is exhausted.

20  **Ground 7:**

21        In Ground 7, petitioner alleges in the main[31] that he was denied effective assistance

22  of counsel in violation of the Sixth and Fourteenth Amendments when trial counsel failed to

23  conduct investigation that would have produced exculpatory evidence.  Petitioner alleges, in

24  particular, that trial counsel: (1) failed to interview witnesses Dan Smolinski, Dolores Harris,

25

26  _____

27  [30]The Court first must give petitioner an opportunity to make an election as to the relief to request vis-à-vis the unexhausted claims.

28  [31]See note 11, *supra*.

-16-

1  and Diana Stubenrauch, which would have enabled counsel to either exclude their
2  identification testimony entirely or at least impeach the witnesses; (2) failed to interview
3  Ruffin's alleged accomplices, Kimberly Meeks and Wanda Duncan, to discover that Meeks
4  allegedly would have testified that she did not know Ruffin and that she never rented a car
5  with Duncan; (3) failed to develop any witnesses for the defense, such as a New York-New
6  York casino bell captain who potentially could have disputed Stubenrauch's identification of
7  Ruffin as the black male on the elevator; and (4) failed to retain an identification expert who
8  allegedly could have demonstrated that the identifications made by Stubenrauch, Smolinski,
9  and Harris were inherently untrustworthy.[32]

10         In principal part, respondents challenge the exhaustion of the first two parts above.

11         The Court is persuaded that, with the exception of investigation as to Dan Smolinski
12  as to the Circle K videotape as discussed as to Ground 6, which is addressed under that
13  ground, the first two parts of Ground 7 described above are not exhausted.  Petitioner points
14  to his claim in state Ground 2 that counsel was ineffective for  not, *inter alia*, "interviewing all
15  state witnesses prior to trial."[33]   However, again, petitioner must fairly present both the
16  operative facts and the legal theory supporting his claim to the state courts.  *Castillo, supra*.
17  Presenting a claim in federal court as to the failure to interview particular witnesses and the
18  resulting prejudice therefrom does indeed fundamentally alter an only conclusory claim
19  presented in the state courts.  The conclusory claim in the – counseled – state petition did not
20  present the state courts with any operative factual allegations of any degree of specificity as
21  to the failure to interview witnesses other than that the New York-New York bell captain had
22  not been interviewed and that he "could have been a defense witness in the case."[34]  A claim
23  devoid of any factual particulars, particularly as to the prejudice element, remains conclusory
24  even when presented by counsel with accompanying legal argument.

25
26         [32]#49, at 29-31.

27         [33]#37, Ex. 82, at 10.

28         [34]#37, Ex. 82, at 10-11.

1    Petitioner's reliance upon factual allegations in other claims in the state petition to
2    show full exhaustion of federal Ground 7 again is misplaced.  Petitioner must fairly present
3    the state courts with *both* the operative facts *and* the federal legal theory supporting his claim.
4    The federal exhaustion requirement again is not satisfied in a mix-and-match, smorgasbord
5    fashion under which claims are exhausted so long as the facts and legal theory are articulated
6    somewhere in the state petition, albeit not together in the same claim.

7    Ground 7 therefore is unexhausted to the extent that petitioner claims that trial counsel
8    was ineffective for failing:  (1) to interview witnesses Dan Smolinski,[35] Dolores Harris, and
9    Diana Stubenrauch, to enable counsel to either exclude their identification testimony entirely
10   or at least impeach the witnesses; (2) to interview Ruffin's alleged accomplices, Kimberly
11   Meeks and Wanda Duncan, to discover that Meeks allegedly would have testified that she did
12   not know Ruffin and that she never rented a car with Duncan.

13   **Grounds 8, 9 & 10**

14   Respondents raise no exhaustion issues as to Grounds 8, 9 & 10.

15   **Grounds 11 & 12**

16   Grounds 11 and 12 involve similar exhaustion issues.

17   In Ground 11, petitioner alleges in the main[36] that he was denied effective assistance
18   of counsel in violation of the Sixth and Fourteenth Amendments when appellate counsel failed
19   to argue that sentencing him as a habitual criminal to life with the possibility of parole
20   constituted excessive punishment in violation of the Eighth and Fourteenth Amendments.[37]

21   In Ground 12, petitioner alleges that his sentencing as a habitual criminal denied him
22   due process of law in violation of the Fifth and Fourteenth Amendments because the state
23   district court: (a) made no specific finding that he deserved to be declared a habitual criminal
24   or that it was just and proper to do so; (b) failed to state the reason why a habitual criminal

25

26   [35] Smolinski's testimony specifically regarding the Circle K videotape is addressed under Ground 6.

27   [36] See note 11, *supra*.

28   [37] #49, at 39-40.

-18-

sentence was appropriate; and (c) sentenced him as a habitual criminal "without the necessary paperwork."[38]

On the direct appeal from the original June 13, 2000, judgment of conviction, Ruffin's appellate counsel did not challenge the habitual criminal adjudication.  The Supreme Court of Nevada affirmed the conviction on direct appeal on November 19, 2001.[39]

In March 2002, petitioner filed a motion to modify sentence.  He presented claims therein, *inter alia*, that he was denied due process because the state district court made no specific finding that it was just and proper to adjudicate him a habitual criminal and sentenced him as a habitual criminal based upon uncertified documents.[40]

In December 2002, petitioner filed a state post-conviction petition.  He presented, *inter alia*, a claim therein that he was denied effective assistance of counsel when appellate counsel failed to argue that sentencing him as a habitual criminal to two consecutive sentences of life with the possibility of parole, after ten years on each sentence, constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Petitioner specifically argued:

> . . . . Even one habitual criminal adjudication, with life on parole, would surely discourage any type of repeat behavior, once paroled after ten years on a single pick-pocketing offense, however even imposition of one adjudication was an abuse of discretion.  Two consecutive life sentences for pick-pocketing constitutes cruel and unusual punishment.

#37, Ex. 82, at 20-21.

The Supreme Court of Nevada consolidated the appeals from the denials of the motion and petition.  The state district court clerk, however, was unable to locate the exhibits filed with the habitual criminal adjudication in response to the state high court's directives.  In its June 8, 2004, written decision, the state supreme court found and proceeded as follows:

_____

[38]#49, at 40-41.

[39]#36-37, Exhs. 48, 61 & 69.

[40]#37, Ex. 72.

. . . . The records transmitted to this court in response to [its] directives reveal that at Ruffin's sentencing hearing the State presented the district court with copies of Ruffin's prior judgments of conviction.  The records before this court, however, do not contain copies of those prior judgments of conviction.  Nor does it appear that these documents are presently part of the records maintained by the clerk of the district court.

The Office of the Clark County Clerk has informed the clerk of this court that it is unable to locate any of these documents and is "at a loss as to what might have happened to these exhibits."  The State has informed this court that it can only locate in its internal files some of the prior judgments of conviction originally presented as evidence below.  Although the State has submitted copies of the available judgments directly to this court under seal, the documents have not been reviewed or authenticated by appellant or the district court.

Without a complete record containing copies of the prior judgments of conviction admitted into evidence and relied upon by the district court in adjudicating Ruffin a habitual criminal, we are unable to conduct a meaningful review of the district court's *orders* resolving the claims Ruffin presented below attacking his habitual criminal adjudication.[FN3]  Under these circumstances, we have concluded that Ruffin's sentence must be vacated, and this matter must be reversed in part and remanded for a new sentencing hearing . . . in which the State, in its discretion, may again seek habitual criminal adjudication.[FN4] . . . .  In light of our conclusions in this respect, we dismiss as moot Ruffin's appeal . . . from the district court's order denying his motion to modify his sentence.

[FN3] See Lopez v. State, 105 Nev. 68, 84-85, 769 P.2d 1276, 1287 (1989) (recognizing that "meaningful, effective appellate review depends upon the availability of an accurate record covering lower court proceedings relevant to the issues on appeal"); Daniel v. State, 119 Nev. ___, ___, 78 P.3d 890, 897 (2003).

[FN4] This court's prior decisions in [citations omitted] are distinguishable.  Here, the State filed a timely notice of intent to seek habitual criminal adjudication and presented the district court with copies of prior judgments of conviction at Ruffin's sentencing hearing.   For reasons unknown, however, these documents have been lost or misplaced through no apparent fault of the State.

#38, Ex. 110, at 3-4 (emphasis added).

The state supreme court of course could dismiss the entire appeal from the order denying Ruffin's motion to modify his sentence as moot because that appeal concerned only

1    issues involving the habitual criminal adjudication.  The appeal from the order denying the

2    post-conviction petition, in contrast, concerned other issues in addition to the claims of

3    ineffective assistance of counsel regarding the habitual criminal adjudication.  After discussing

4    the non-sentencing claims, the state high court affirmed "that portion of the district court's

5    order denying the allegations of effective assistance in Ruffin's petition *unrelated to the*

6    *habitual criminal adjudication."*  The court noted that it "express[ed] no view respecting the

7    validity of the district court's prior habitual criminal adjudication" and that any appeal from the

8    decision on remand should be docketed "as a new and separate matter."[41]

9         On remand, the state district court appointed counsel for petitioner and held a new

10   sentencing proceeding.  At the second sentencing, the district court adjudged Ruffin a

11   habitual criminal.  The court sentenced Ruffin to two life sentences with the benefit of parole

12   after ten years.  However, the court ordered the sentences to run concurrently rather than

13   consecutively. An intervening amended judgment of conviction was entered on July 12, 2005,

14   and an amended judgment was entered on September 28, 2005, providing credit for time

15   served.[42]

16        Petitioner appealed and was represented by counsel on the appeal.  The appellate

17   counsel on this second direct appeal of right did not raise any claims corresponding to the

18   claims now presented in federal Ground 12.  The Supreme Court of Nevada rejected the

19   claims presented on the second direct appeal and affirmed, on April 6, 2007.[43]

20        Less than two months thereafter, petitioner proceeded directly to federal court with the

21   present action without seeking any further relief in the state courts.  He in particular did not

22   file a state post-conviction petition presenting any claims of ineffective assistance of counsel

23   challenging the performance of the different appellate counsel on the second direct appeal.

24   That second direct appeal of right had challenged an intervening judgment of conviction that

25   _____

26   [41]#38, Ex. 110, at 6 & 7 n. 13 (emphasis added).

27   [42]#38, Exhs. 122, 125 & 131.

28   [43]#38, Exhs. 142 & 145.

-21-

1    imposed a different sentence that had been entered following a different sentencing hearing,
2    one that had been conducted on a wholly *de novo* basis before a different sentencing judge.

3         In the answer, respondents contended initially that the only similar claims presented
4    to the state courts – directed to the habitual criminal adjudication and sentence under the
5    original judgment of conviction – became moot when the original sentence was vacated for
6    a new sentencing hearing.  Respondents contended further that if petitioner instead was
7    seeking to pursue the claims as a challenge to the intervening judgment of conviction, the
8    claims were not exhausted because petitioner never had challenged the intervening judgment
9    of conviction on that basis.

10        Petitioner confirmed in the reply that he indeed is seeking to pursue the claims in
11   federal court as a challenge to the habitual criminal adjudication made and sentence rendered
12   in the second sentencing hearing.

13        Petitioner contends, first, that he fairly presented the legal theory and operative facts
14   of the ineffective assistance claim on the appeal from the denial of the motion to modify
15   sentence and state post-conviction petition.  He urges that "[t]he fact that the Nevada
16   Supreme Court failed to reach the issue on appeal should not affect the exhaustion analysis."
17   He maintains that the state supreme court could not "unexhaust" the claim.[44]

18        This argument is without merit.

19        Petitioner clearly never challenged the intervening September 28, 2005, amended
20   judgment of conviction based on the claims in federal Grounds 11 and 12.  The claims that
21   petitioner presented in the state courts pertained to an earlier habitual criminal adjudication
22   and sentence under an earlier June 13, 2000, judgment as to which the sentence was
23   vacated by the state supreme court.  Petitioner never attacked the September 28, 2005,
24   amended judgment of conviction, which imposed a different sentence after a second *de novo*
25   sentencing hearing before a different judge, on the basis of the claims in federal Grounds 11
26   and 12.

27   _____

28        [44]#54, at 66 & 70.

1    Indeed, no reviewing court hearing the second direct appeal reasonably could have

2    concluded that petitioner still was – *sub silentio* – pursuing the claims in Grounds 11 and 12

3    on that appeal.

4    As for the claim of ineffective assistance of appellate counsel in Ground 11, such a

5    claim could not even have been properly pursued in a direct appeal rather than a state post-

6    conviction petition.  Further, petitioner argued in the prior state post-conviction petition that

7    appellate counsel on the first direct appeal was ineffective for failing to argue that while one

8    sentence of life with the possibility of parole after ten years was an abuse of discretion, *two*

9    such *consecutive* sentences was cruel and unusual punishment.  Petitioner never has

10   presented the state courts with the argument that the concurrent sentences that he

11   *presently* is serving constitute not only an abuse of discretion but also cruel and unusual

12   punishment.  Petitioner never has claimed in the state courts that appellate counsel on the

13   second direct appeal – which was directed to the intervening judgment of conviction under

14   which he currently is in custody – was ineffective for failing to raise an Eighth Amendment

15   challenge to the lesser sentence that he currently is serving.[45]

16   As for the substantive claims in Ground 12, an earlier moot claim that errors -- such

17   as the *first* judge's alleged failure to make required findings on the record – were made at the

18   *first* sentencing hearing on a later-vacated sentence hardly placed the state supreme court

19   on notice that claims were being made that the *second* judge at the *second – de novo –*

20   sentencing hearing committed the same alleged errors.

21   These simply were claims that could have been – but were not – presented to the state

22   courts as a challenge to the second sentence under the intervening judgment after the

23   second, entirely *de novo*, sentencing proceeding.

24   _____

25   [45]Petitioner seeks to minimize the change in sentencing by stating that the only difference is that the
     court imposed the sentences concurrently rather than consecutively. #54, at 66 n.31.  A sentence with

26   eligibility for consideration for a noninstitutional parole after only ten years rather than twenty is a different –
     and markedly less onerous – sentence.  An argument that the consecutive sentencing under a subsequently

27   vacated sentence constituted cruel and unusual punishment did not at all necessarily extend to later
     concurrent sentencing on an intervening judgment as to which this issue never was raised vis-à-vis an

28   ineffective assistance claim.

1     Petitioner urges, second, that it would have been futile to raise the claims in Ground

2 12 on the second direct appeal and the claims in Ground 11 in a later state petition.  He

3 contends that it would have been futile to raise the claims in Ground 12 on the second direct

4 appeal because the state supreme court allegedly already had rejected the same argument

5 in *Hughes v. State*, 116 Nev. 327, 996 P.2d 890 (Nev. 2000).  Petitioner contends that it

6 would have been futile to raise the claim of ineffective assistance of counsel in Ground 11 as

7 to appellate counsel on the second direct appeal in a later post-conviction petition because

8 the state supreme court rejected his other substantive claims on the second direct appeal.

9     As petitioner acknowledges, both the United States Supreme Court and the Ninth

10 Circuit have sharply criticized the concept that alleged futility could excuse a failure to raise

11 a federal constitutional claim where a petitioner had available state judicial procedural

12 avenues to present the claim.

13     In *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Supreme

14 Court rejected the same basic futility argument that Ruffin advances as to Ground 12 when

15 presented as cause for a failure to object at trial:

16

17         If a defendant perceives a constitutional claim and believes
it may find favor in the federal courts, he may not bypass the

18         state courts simply because he thinks they will be unsympathetic
to the claim.  Even a state court that has previously rejected a

19         constitutional argument may decide, upon reflection, that the
contention is valid.

20 456 U.S. at 130, 102 S.Ct. at 1573.

21     Thereafter, in *Noltie v. Peterson*, 9 F.3d 802 (9th Cir. 1993), the Ninth Circuit

22 questioned whether a futility exception remained viable following *Engle v. Isaac*.  9 F.3d at

23 805-06.  The *Noltie* panel stopped short of explicitly overruling its prior futility-exception

24 decision in *Sweet v. Cupp*, 640 F.2d 233 (9th Cir. 1981), however, because the exception

25 would not have been satisfied in *Noltie* in any event.  *Id.*

26     Petitioner acknowledges these decisions but points to *dicta* in the intervening decision

27 in *Lynce v. Mathis*, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997).  In *Lynce*, Justice

28 Stevens' majority opinion for the Court included the following footnote:

1
2
3
4
5
6
7
8
9

> Petitioner did not advance his ex post facto claim in state court. In the District Court respondents challenged his failure to exhaust his state remedies, but do not appear to have raised the exhaustion issue in the Court of Appeals; nor have they raised it in this Court. Presumably they are satisfied, as we are, that exhaustion would have been futile. The Florida Supreme Court, in *Dugger v. Rodrick*, 584 So.2d 2 (1991), held that retrospective application of the provisional credits statute's offense-based exclusion did not violate the Ex Post Facto Clause. The court reasoned that overcrowding credits, unlike basic gain-time or incentive gain-time, were merely "procedural" and did not create any substantive rights. Relying on *Dugger*, the Florida Supreme Court held in *Griffin v. Singletary*, 638 So.2d 500 (1994), that cancellation of provisional credits actually awarded to a prisoner did not violate the Ex Post Facto Clause. Respondents have not suggested any reason why the Florida courts would have decided petitioner's case differently.

10 519 U.S. at 436 n.4, 117 S.Ct. at 893 n.4.  The *Lynce* opinion did not cite *Engle* or seek to

11 reconcile its *dictum* – in a case where the State had not challenged exhaustion on appeal or

12 *certiorari* review – with the holding in *Engle*.  The *Lynce* opinion did not cite any prior Supreme

13 Court authority in a Section 2254 case holding – *Engle* notwithstanding – that such a futility

14 exception existed.

15     As a general rule, the Supreme Court will not read futility or other exceptions into

16 statutory exhaustion requirements where Congress specifically has mandated exhaustion.

17 *See,e.g., Booth v. Churner*, 532 U.S. 731, 741 n.6, 121 S.Ct. 1819, 1825 n.6, 149 L.Ed.2d

18 958 (2001); *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291

19 (1992).  In 28 U.S.C. § 2254(b) and (c), Congress provided numerous specific rules regarding

20 exhaustion of state judicial remedies.  Section 2254(c), in particular, provides that a habeas

21 petitioner "shall not be deemed to have exhausted the remedies available in the courts of the

22 State, within the meaning of this section, if he has the right under the law of the State to raise,

23 by any available procedure, the question presented."  Congress did not provide for an

24 exception to the statutory exhaustion requirements of § 2254(b) and (c) based upon alleged

25 "futility" where a petitioner has "the right under the law of the State to raise, by any available

26 procedure, the question presented."  Petitioner clearly could have raised the claims in Ground

27 12 on the second direct appeal and the claims in Ground 11 in a following state post-

28 conviction petition challenging the effectiveness of counsel on the second direct appeal.

1        This Court thus is not sanguine that the *Lynce dicta* provides a viable basis for ignoring

2   the clear holding in *Engle*, the established rule against reading a futility exception into

3   statutory exhaustion requirements, and the fact that the clear and particularized

4   Congressionally-mandated exhaustion requirement in § 2254(b) and (c) does not provide for

5   a futility exception where state procedural avenues are available to present a constitutional

6   claim.[46]

7        With regard to the claim of sentencing court error in Ground 12, the Court will follow

8   the holding of *Engle* rather than the *dicta* in *Lynce*.  Under *Engle*, Ruffin "may not bypass the

9   state courts simply because he thinks they will be unsympathetic to the claim," given that

10  "[e]ven a state court that has previously rejected a constitutional argument may decide, upon

11  reflection, that the contention is valid."  456 U.S. at 130, 102 S.Ct. at 1573.[47]

12       Petitioner's futility argument is even weaker as to the ineffective assistance claim in

13  Ground 11.  Petitioner urges that merely because the state supreme court rejected other

14  challenges to his habitual criminal adjudication on the second direct appeal, it was futile for

15  him to file a state post-conviction petition presenting the ineffective assistance claim.  On the

16  second direct appeal, the state supreme court rejected claims: (a) that the adjudication of

17  habitual criminal status by a judge rather than a jury violated *Apprendi v. New Jersey*, 530

18  U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); (b) that the district court abused its

19  discretion under state law in adjudicating him a habitual criminal; and (c) that the resentencing

20  violated the Double Jeopardy Clause.[48]  Nothing in the rejection of these claims compelled

21  a rejection of an entirely distinct claim that counsel on the second direct appeal was

22

23      [46]The same holds true as to petitioner's remaining citations.  There is no Supreme Court case

24  squarely addressing the issue and holding – on a contested exhaustion defense – that a viable futility exception exists in Section 2254 cases where Congress' clearly-delineated statutory exhaustion rules otherwise would require exhaustion due to the availability of state procedural avenues to raise a claim.

25

26      [47]Petitioner suggests that the Supreme Court of Nevada stated in *Hughes, supra*, that it will not follow clearly established federal law.  The state supreme court made no such declaration in *Hughes*.  The state

27  high court instead concluded that the Ninth Circuit had misread Nevada state decisions on a subsidiary question of Nevada state law.  The state supreme court remains the final arbiter of Nevada state law.

28      [48]#38, Ex. 145.

1    ineffective for failing to argue that the sentence imposed was excessive under the Eighth

2    Amendment.  Even if, *arguendo*, a viable futility exception exists to the Congressionally-

3    mandated exhaustion requirement in § 2254, petitioner clearly has not demonstrated futility

4    of exhaustion as to Ground 11.

5            Grounds 11 and 12 therefore are not exhausted.

6                                            ***Remaining Matters***

7            The motion (#56) for decision will be granted to the extent consistent with the action

8    taken herein.  The Court notes in this regard that Local Rule LR 7-6(b) provides for the

9    procedure in this Court with regard to matters under submission.  The Court is not persuaded

10   that the time periods delineated in the Circuit Advisory Committee Note to Ninth Circuit Rule

11   25-2 – regarding various proceedings in the appellate court – properly serve as guidelines vis-

12   à-vis proceedings in this court of first impression.  Over and above an overall effort to move

13   all cases as expeditiously as possible, the federal district courts are subject to the reporting

14   requirements of the Civil Justice Reform Act (CJRA).  Petitioner of course may file any motion

15   felt to be warranted under the circumstances.  However, counsel normally can rest assured

16   that after the Court has sought to expedite the case in an effort to meet a semiannual CJRA

17   reporting deadline but has missed that deadline and then another, the Court very much is

18   aware of the case but has been unable to issue a decision any sooner.

19           As petitioner notes, the age of the case is a concern, which includes the Court's delay

20   in being able to reach and resolve the exhaustion issues addressed herein.  Counsel for both

21   petitioner and respondents accordingly should seek an extension of the deadlines established

22   herein only in the most extraordinary of circumstances.  The Court still is seeking to resolve

23   all aspects of the case at the very latest before the next CJRA deadline, which in this instance

24   is September 30, 2011.  The Court thus will be seeking to resolve the matter of petitioner's

25   election as to the relief to be requested as to the unexhausted claims expeditiously before,

26   if necessary, then moving promptly thereafter to the merits issues in the pleadings on file.

27   Such merits review includes consideration of the request for an evidentiary hearing.

28           / / / /

1    IT THEREFORE IS ORDERED that the Court holds that the following claims (the
2  "unexhausted claims") are not exhausted:

3              (1)    Ground 3 to the extent that petitioner alleges that
4                     trial counsel was ineffective for failing to object to
5                     references in the State's opening statement and
6                     closing argument about the Bellagio videotape;

7              (2)    Ground 4 in its entirety;

8              (3)    Ground 5 to the extent that petitioner claims that
9                     trial counsel was ineffective for failing: (a) to
10                    challenge the identification testimony of Dan
11                    Smolinski and Dolores Harris; and (b) to object to
12                    Diana Stubenrauch's testimony identifying Ruffin in
13                    the surveillance video as inadmissible lay opinion;

14             (4)    Ground 7 to the extent that petitioner claims that
15                    trial counsel was ineffective for failing: (a) to
16                    interview witnesses Dan Smolinski, Dolores Harris,
17                    and Diana Stubenrauch, to enable counsel to either
18                    exclude their identification testimony entirely or at
19                    least impeach the witnesses; and (b) to interview
20                    Ruffin's alleged accomplices, Kimberly Meeks and
21                    Wanda Duncan, to discover that Meeks allegedly
22                    would have testified that she did not know Ruffin
23                    and that she never rented a car with Duncan; and

24             (5)    Grounds 11 and 12 in their entirety.

25    IT FURTHER IS ORDERED that petitioner shall have **twenty-one (21) days** from entry
26  of this order within which to file a motion for dismissal without prejudice of the entire petition,
27  for partial dismissal only of the unexhausted claims, and/or for other appropriate relief.

28    / / / /

1    IT FURTHER IS ORDERED that any motion filed must contain or be accompanied by,

2   either contemporaneously or via a document filed within **ten (10) days** thereafter, a signed

3   declaration by petitioner under penalty of perjury pursuant to 28 U.S.C. § 1746 that he has

4   conferred with his counsel in this matter regarding his options, that he has read the motion,

5   and that he has authorized that the relief sought therein be requested from the Court.

6    IT FURTHER IS ORDERED that respondents shall have **fourteen (14) days** to file a

7   response to any such motion filed, running from the filing of the declaration, and petitioner

8   shall have **seven (7) calendar days** to file a reply, including any intermediate weekends or

9   holidays except for the last such day.

10    IT FURTHER IS ORDERED that petitioner's motion (#56) for decision is GRANTED

11   to the extent consistent with the action taken herein.

12    The entire petition, as amended, will be dismissed without prejudice for lack of

13   complete exhaustion if a motion and/or the required verification is not timely filed.

14    **Extension of the deadlines established herein will be considered in only the most**

15   **extraordinary of circumstances**.

16    DATED:  June 13, 2011.

17

18

19   _____

20   ROGER L. HUNT
     United States District Judge

21

22

23

24

25

26

27

28

-29-