1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

KEVIN TYRONE RUFFIN,

    *Petitioner*,

vs.

DIRECTOR NEVADA DEPARTMENT
OF CORRECTIONS, *et al.*,

    *Respondents*.

2:07-cv-00721-RLH-PAL

ORDER

This represented habeas matter under 28 U.S.C. § 2254 is before the Court for a decision with regard to the remaining grounds in the second amended petition (#49).

### *Background*

Petitioner Kevin Ruffin seeks to set aside his September 28, 2005, amended Nevada state court judgment of conviction, pursuant to a jury verdict in 2000, of burglary and larceny from the person with an adjudication as a habitual criminal. He is serving two concurrent life sentences with the possibility of parole after ten years.

The charges arose from two pickpocketing incidents in Las Vegas -- one on February 7, 1999, in an elevator at the Bellagio Hotel and Casino (the "Bellagio") and another on February 18, 1999, in an elevator at the New York-New York Hotel and Casino (the "New York-New York"). In the single trial, the jury hung on the Bellagio counts, and those counts later were dismissed. The jury found Ruffin guilty of the two counts arising from the New York-New York incident.

1    Petitioner challenged the original June 13, 2000, judgment of conviction, sentence,

2  and/or habitual criminal adjudication on direct appeal, in a post-judgment motion to modify

3  sentence, and in a state post-conviction petition.  The Supreme Court of Nevada affirmed on

4  direct appeal.  On the appeal from the denial of the motion to modify sentence and the state

5  petition, the state supreme court affirmed in part and vacated and remanded the habitual

6  criminal adjudication.  The state supreme court vacated the habitual criminal adjudication and

7  sentence and remanded for a *de novo* resentencing proceeding because the state district

8  court clerk was not able to locate the copies of the prior convictions from the sentencing.[1]

9    Following a *de novo* resentencing, an amended judgment of conviction was entered

10  on July 12, 2005, and thereafter was amended again on September 28, 2005, to include

11  credit for time served.  The Supreme Court of Nevada affirmed on a second direct appeal, on

12  April 6, 2007.  Petitioner thereafter proceeded to federal court without first pursuing any other

13  state judicial remedies subsequent to the second direct appeal.[2]

14                        ***Standard of Review on the Merits***

15    The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly

16  deferential" standard for evaluating state-court rulings that is "difficult to meet" and "which

17  demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*,

18  131 S.Ct. 1388, 1398 (2011).  Under this highly deferential standard of review, a federal court

19  may not grant habeas relief merely because it might conclude that the state court decision

20  was incorrect.  131 S.Ct. at 1411.  Instead, under 28 U.S.C. § 2254(d), the court may grant

21  relief only if the state court decision: (1) was either contrary to or involved an unreasonable

22  application of clearly established law as determined by the United States Supreme Court as

23  of the time of the state court decision and based on the record presented to the state courts;

24  or (2) was based on an unreasonable determination of the facts in light of the evidence

25  presented at the state court proceeding.  131 S.Ct. at 1398-1401.

26  _____

27    [1]See #36-38, Exhs. 48, 69 & 110.

28    [2]See #38, Exhs. 125, 131 & 145.

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003). A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." 540 U.S. at 16, 124 S.Ct. at 11. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18, 124 S.Ct. at 12; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

1  Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct
2  unless rebutted by clear and convincing evidence.

3  The petitioner bears the burden of proving by a preponderance of the evidence that
4  he is entitled to habeas relief.  *Pinholster*, 131 S.Ct. at 1398.

5  ***Discussion***

6  **Ground 1: Batson Claim**

7  In Ground 1, petitioner presents a *Batson*[3] claim, alleging that the prosecution struck
8  the sole black juror on the jury venire because of her race, denying petitioner, who also is
9  black, equal protection of the laws in violation of the Fourteenth Amendment.[4]

10  Under the jury selection procedure used in the state district court, the venire consisted
11  initially of 35 prospective jurors, who were questioned by the court collectively.  The clerk
12  thereafter called up 23 prospective jurors from the venire in a random and non-alphabetical
13  order.  The venire members then were questioned individually in open court in the presence
14  of the rest of the venire.  During both the collective and individual questioning, selected
15  prospective jurors were excused for cause along the way based upon their responses.  After
16  23 prospective jurors had been individually questioned without being excused for cause, the
17  State and the defense then exercised up to five peremptory challenges each.  The bailiff
18  would hand the jury venire list to one side then the other, starting with the State, until each
19  side had either exercised or waived five peremptory challenges.  The first 13 of the these 23
20  venire members, in the order called initially, who were not struck by a peremptory challenge
21  were seated as the jury and alternate.[5]

22  Ms. Avan Wilson was the sole African-American prospective juror in the venire.  She
23  was, in order, the fourth prospective juror called of those who had not been excused for cause
24  prior to the peremptory challenges.  See #35, Ex. 36, at 45-50.

25

26  [3]*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

27  [4]#49, at 11-14 (second amended petition); #54, at 8-19 (reply).

28  [5]See,e.g., #35, Ex. 36, at 7-8, 13, 18, 21, 24 & 34; #36, Ex. 38, at 148-49.

-4-

After the bailiff handed the jury list with the strikes up to the bench, the state district court started reading the names of the prospective jurors who were being excused after the peremptory challenges.  However, the court, apparently *sua sponte* as the transcript reads, then stopped and recessed the proceeding for a conference in chambers.[6]

The following on-the-record exchange occurred in chambers:

| | |
|---|---|
| THE COURT: | Okay.  Mr. Hehn [for the State], there is only one African-American prospective juror on this panel and you have chosen to exercise a peremptory challenge on that.  I have to have a non-racial reason or reasons – -- |
| MR. HEHN: | Sure. |
| THE COURT: | – – why you are challenging. |
| MR. HEHN: | Absolutely.  She stated, when she was talking with Mr. Walton [for the defense], that his face was very familiar, that I felt as though she laughed immaturely and inappropriately while he was talking with her, which indicated to me that she was trying to kind of curry favor with him.  And also she stated that she had a baby sitting problem immediately after 5 o'clock, and I felt as though that would interfere with her ability to deliberate if we adjourned and they start deliberating, which would maybe take them past 5 o'clock, she would just throw an answer rather than actually deliberate. |
| THE COURT: | Okay.  Mr. Walton, I'm going to – I think those are legitimate reasons and for those reasons I'm not going to preclude him from challenging her.  You may put anything on the record that you wish. |
| MR. WALTON: | Yes, Judge.  I declare for the record that that's not a sufficient race-neutral for [sic] reason for excluding the only prospective black panel member and I'd like my objection to be noted for the record. |
| THE COURT: | They are noted for the record.  Thank you very much.  That will be it. |

#36, Ex. 38, at 149-50.

---

[6]See #35, Ex. 36, at 149.

1    The foregoing was the entirety of the argument presented in the state district court on
2    the *Batson* issue, which appears from the transcript to have been raised *sua sponte* by the
3    court rather than initially by the defense.  Other than the conclusory statement that the State
4    had not given a sufficient race-neutral reason, the defense did not specifically challenge the
5    factual assertions made by the State.  Nor did the defense seek to argue that other facts
6    demonstrated that the reasons given by the State were merely pretextual.

7    The state district court thereupon reconvened the matter, excused the rest of the struck
8    prospective jurors, and had the jury sworn.  Avan Wilson was the second prospective juror
9    of the 23 called – vis-à-vis the order in which they were called by the clerk – who was struck
10   by a party.[7]  The record does not reflect which side struck which prospective jurors other than
11   Wilson.  Nor does the record reflect the order in which the prospective jurors were struck as
12   the list was passed back and forth between the State and defense.  For example, the record
13   does not reflect whether the State struck Wilson with its first, last, or an intermediate
14   peremptory challenge.  There is no suggestion in the record that counsel were required to go
15   down the jury list in order when exercising their peremptory challenges.

16   On direct appeal, petitioner alleged that the State's exercise of a peremptory challenge
17   as to prospective juror Wilson deprived him of equal protection of the laws, relying on *Batson*.
18   Petitioner contended that the State's explanation for the strike did not present an adequate
19   race-neutral explanation.  Petitioner argued specifically:

20       Not liking how a prospective juror laughed and resorting to
         the non-issue of the trial going past five o'clock (which the trial
21       judge had indicated would not happen) were nothing more than
         pretextual excuses for eliminating the only African-American from
22       the jury.

23   #36. Ex. 61, at 8-9.

24   Petitioner presented no other factual basis on direct appeal for concluding that the
25   State's reasons were inadequate.

26

27   ───────────────────

28   [7]The only other prospective juror who was struck who preceded Wilson in the order that the 23 were
     called by the clerk was Joanne Silvernail. Compare #35, Ex. 36, at 36-40, with #36, Ex. 38, at 149.

The Supreme Court of Nevada rejected the claim presented to that court on the following grounds:

> . . . [A]ppellant contends that the district court erred by rejecting his objection under Batson v. Kentucky to the prosecutor's use of a peremptory challenge to strike the only African-American venireperson on the jury panel.  Appellant argues that the State's explanation for the exercise of the peremptory strike was pretextual and proves purposeful discrimination.  We conclude that the district court did not err and that appellant's contention is without merit.

> Pursuant to Batson and its progeny, there is a three-step process for evaluating race-based objections to peremptory challenges: (1) the opponent of the peremptory challenge must make a prima facie showing of racial discrimination; (2) upon a prima facie showing, the proponent of the peremptory challenge has the burden of providing a race-neutral explanation; and (3) if a race-neutral explanation is tendered, the trial court must decide whether the proffered explanation is merely a pretext for purposeful discrimination.  The ultimate burden of proof regarding racial motivation rests with the opponent of the strike.  The trial court's decision on the question of discriminatory intent is a finding of fact to be accorded great deference on appeal.

> We conclude that a review of the jury voir dire transcript reveals that the State adduced a sufficiently race-neutral explanation for striking the juror.  The district court asked the State for an explanation for its strike, and the prosecutor responded.

> [The juror] stated, when she was talking with [defense counsel] that his face was very familiar, that I felt as though she laughed immaturely and inappropriately while he was talking with her, which indicated to me that she was trying to kind of curry favor with him.  And also she stated that she had a baby sitting problem immediately after 5 o'clock, and I felt as though that would interfere with her ability to deliberate if we adjourned and they start deliberating, which would maybe take them past 5 o'clock, she would just throw an answer rather than actually deliberate.

> The district court subsequently ruled that the State's peremptory strike was proper.  Appellant failed to prove that the explanation was a pretext for purposeful discrimination, and therefore, we conclude that the district court did not err in rejecting appellant's objection to the strike.

#37, Ex. 69, at 1-2 (citation footnotes omitted).

/ / / /

1   On federal habeas review, petitioner, among other arguments, maintained for the first
2   time that the State's reliance upon Wilson's babysitting issue was pretextual because the
3   State had not struck two other prospective jurors who allegedly had similar scheduling issues.
4   The two other jurors were: (1) Lisa Scarpati, who was the prospective juror called by the clerk
5   immediately after Wilson and the third juror on the jury in that order; and (2) Diane Hill, who
6   was the sixteenth remaining prospective juror in the order called by the clerk who had not
7   been excused for cause and the ninth juror on the jury in that order.[8]  Both Scarpati and Hill
8   were seated on the jury.  In federal court, Ruffin has sought to establish that the State's
9   reliance upon the babysitting issue was pretextual by undertaking a comparative analysis of
10  the answers given by the struck Wilson to the answers given by Scarpati and Hill, who were
11  not struck by either party.

12      The Court has held that the claim as presented on federal review is exhausted, while
13  noting that the exhaustion issue is a debatable one.  This holding was based upon authorities
14  holding that reliance upon additional factual arguments not presented to the state courts does
15  not necessarily render a claim unexhausted.  The Court noted, however, the substantial
16  tension between these authorities and *Pinholster, supra*.  The Court questioned the propriety
17  of conducting AEDPA review of a state court merits adjudication based upon factual
18  arguments that were not presented to the state courts, particularly as to a *Batson* claim.[9]

19      Following the recent supplemental briefing, the Court is persuaded that under current
20  Supreme Court and Ninth Circuit precedent, the state and federal courts are to conduct such
21  a comparative analysis even if not specifically argued by the defendant/petitioner.  *See,e.g.,*
22  *Miller-El v. Dretke*, 545 U.S. 231, 241 & nn. 1 & 2, 125 S.Ct. 2317, 2325-26 & nn. 1 & 2, 162

23

24      [8]The alternate was selected from among the thirteen through an essentially random process.  See
25  #36, Ex. 38, at 152.  In Ruffin's case, the seventh juror of the final thirteen was selected as the alternate.  Hill
    is listed as the tenth juror on the final jury list. #35, Ex. 37.  However, Hill was the ninth of the jurors excluding
    the alternate.

26

27      [9]#57, at 6-7 & n. 10.  *Cf. Haney v. Adams*, 641 F.3d 1168 (9th Cir. 2011)(requiring contemporaneous
    *Batson* objection so that, *inter alia*, the prosecutor may respond based upon his current perceptions and the
28  trial judge can evaluate the prosecutor's demeanor and credibility similarly based upon the judge's current
    perceptions).

-8-

L.Ed.2d 196 (2005); *Kesser v. Cambra*, 465 F.3d 351, 361 (9th Cir. 2006)(*en banc*); *see also Miller-El*, 545 U.S. at 256 n.15, 125 S.Ct. at 2334 n.15 (related discussion).  To the Court's eye, however, substantial tension remains between the manner of conducting AEDPA review as described in *Pinholster* and precedent allowing pursuit of factual argument not raised contemporaneously in the trial court at the time of the *Batson* challenge.  It is, at best, problematic in this context to address arguments and inferences drawn after the fact from a cold record, particularly if a State's responses to what may be *post hoc* arguments then are dismissed as *post hoc* rationales.[10]  This Court, in any event, must – and will – follow the controlling precedent cited above.

In all events, applying a comparative analysis, the Nevada Supreme Court's rejection of Ruffin's *Batson* challenge was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court.[11]

Ruffin contends, first, that the prosecutor's stated concern as to Wilson's babysitting issue was pretextual.  He contends that this reason was pretextual both when viewed in isolation and when her responses are compared to the responses of jurors Hill and Scarpati.

Voir dire commenced at 1:50 p.m. on Tuesday, January 18, 2000.  During his preliminary remarks, the presiding judge informed the venire that – due to sundry scheduling conflicts – they would go to 3:45 p.m. that Tuesday afternoon, would go from 9:00 a.m. to 12:00 noon on Wednesday, would "be able to go all day Thursday, if necessary, and all day Friday, if necessary."  The judge stated, however, that "[m]y guess is we should probably be able to finish some time Thursday but I can't promise that." #35, Ex. 36, at 17-18.

---

[10]*Cf. Miller-El*, 545 U.S. at 245 n.4 & 252, 125 S.Ct. at 2328 n.4 & 2332 (dismissing arguments urged by the dissent "that the prosecution itself did not offer" at trial).

[11]The Court is not persuaded that the Nevada Supreme Court's decision is owed no deference under the AEDPA on the premise that the state supreme court did not articulate a detailed analysis.  The state high court properly stated the basic three-part inquiry under *Batson* and stated its conclusion – in response to largely conclusory argument in both the district court and on appeal – that petitioner had failed to demonstrate that the State's proffered explanation was merely a pretext for purposeful discrimination.  A state court need not articulate every twist and turn of its analysis in rejecting a claim on the merits for its decision to be subject to deferential AEDPA review.  This conclusion applies as well to the factual determination made by the state high court.  A factual determination does not have to be explained or justified in detail to be a reasonable one.

1    Subsequently, during the collective questioning, the judge made the following inquiry:

2
3            Next, this case, as I said, is expected to last three days.
         That will be a half-a-day today, a half-a-day tomorrow, so it could
4        go into Friday. Is there anybody, who, for whatever reason, could
         not stay here for that period of time?

5    #35, Ex. 36, at 20.

6    Prospective jurors Diane Hill, Avan Wilson, and Lisa Scarpati, among others, but in that

7    relative order, responded as follows:

8            THE COURT:          161. Okay. What's the problem?

9            [HILL]:             I'm a catering manager at Mandalay Bay,
                                 and I'm – we have a lot of groups in this
10                               week. And it could or could not affect me,
                                 I'm not sure. It depends on how long it
11                               goes.

12           THE COURT:          Well, I know the people at – some of the
                                 executives at Mandalay Bay and I'm sure
13                               they would not want you off this jury so I'm
                                 going to not excuse you for that reason.
14                               Okay. If I started excusing people for work
                                 then there's not a person sitting here, in all
15                               probability, that I shouldn't excuse. So I'm
                                 sure that if you had a heart attack Mandalay
16                               Bay is not going to fold nor is their catering
                                 department. And I'm not wishing anything
17                               bad on you. I'm just saying that I think they
                                 can get along without your for the next three
18                               days.

19                               . . . . .

20           [WILSON]:           Avan Wilson, badge number 146. It
                                 basically depends on the ending, when the
21                               day ends on Thursday. I'm a single parent
                                 so if it goes past 5 or 5:30 I'll have a
22                               babysitting problem for my daughter.

23           THE COURT:          It won't go past 5 because we'll let out.

24           [WILSON]:           Okay.

25           THE COURT:          Barring something very unforseen.

26           [WILSON]:           Okay.

27                               . . . . .

28

| | | |
|---|---|---|
| [SCARPATI]: | I have a doctor's appointment Thursday morning at 8 o'clock. |
| THE COURT: | Well, that could be changed, though, couldn't it? |
| [SCARPATI]: | Should I just reschedule it? |
| THE COURT: | Yes, please do.  Tell them that you're serving on jury duty and if you need a note from me or anything like that, so that they don't charge you for the appointment, I assume they won't.  Thank you. |

#35, Ex. 36, at 20 & 22-23.  Wilson said later in voir dire that "[a]t least by 5:30 I need to pick up my daughter."  *Id.*, at 48.

At the very outset, petitioner's "comparative analysis" is fundamentally flawed.  A prospective juror concerned about a purported conflict between jury duty and her employment is not in a similar situation as a juror concerned about a conflict between jury duty and caring for her child as a single parent.  Trial courts routinely tell prospective jurors, absent special circumstances not present in Hill's situation, that a conflict between jury duty and "being needed at work" is not a valid reason for being relieved from jury duty.  Trial courts routinely *release* prospective jurors where the need for a single parent to be home with a child cannot be reconciled with the requirements of jury duty.  A concern about employment in no sense is the same as a single parent's concern about the need to be home with their child.[12]

Similarly, a prospective juror concerned about a conflict between a health care appointment and jury duty is not in a similar situation as Wilson was in.  As happened in the present case, if the health care appointment involves a non-critical situation and can be rescheduled, the health care appointment does not provide a basis for being relieved from jury duty.  In this case, Scarpati's agreement to "just reschedule" the appointment wholly eliminated that issue as a concern for her.  In contrast, Wilson did not stop being a single parent with a need to be home with her child in the evening after the voir dire exchange.

---

[12]The Court is cognizant that the matter at hand concerns peremptory challenges rather than being excused for cause.  The difference in how these two wholly dissimilar situations are handled with respect to a prospective juror being excused for cause, however, emphasizes how markedly dissimilar the situations are.

1      Petitioner's effort to lump these three entirely dissimilar situations into "the same

2  situation" by characterizing them as "scheduling conflicts" is – completely – unpersuasive.[13]

3      Ruffin's arguments focusing on Wilson in particular are no more persuasive.

4      Petitioner urges that the prosecutor "misrepresented" Wilson's testimony when he said

5  that she had a babysitting issue "immediately" after 5:00 o'clock.  A showing neither of pretext

6  for racial discrimination nor of an objectively unreasonable application of *Batson* is

7  demonstrated by such minutiae.  The prosecutor stated in pertinent part:

8              . . . . [S]he stated that she had a baby sitting problem immediately
             after 5 o'clock, and I felt as though that would interfere with her
9            ability to deliberate if we adjourned and they start deliberating,
             which would maybe take them past 5 o'clock, she would just
10           throw an answer rather than actually deliberate.

11  #36, Ex. 38, at 150.  Such imprecision the next day after the completion of voir dire reflects

12  not pretext but instead an irrelevant inexactitude.  The core concern reflected by the

13  prosecutor's statement was that if the case went to the jury toward the end of the day and

14  deliberations looked like they might run past the time that Wilson needed to be at home with

15  her child, she might have a tendency to accede to a verdict.  That concern by the prosecutor

16  – as to what might happen if deliberations were to threaten to run past the time that Wilson

17  needed to be home – had not been resolved by the trial court telling Wilson that the court

18  would adjourn at 5:00 p.m. "[b]arring something very unforeseen."

19      Petitioner maintains that Wilson's concern was limited to Thursday.   However,

20  Thursday was the day that the trial judge expected the case to go to the jury.[14]  That in fact

21  is the day that the case ultimately *did* go to the jury.[15]  The prosecutor's concern was with that

22  Wilson might accede to a verdict – on the day that the case most likely would be going to the

23  jury, Thursday – as the time that she needed to be home with her child approached.

24  _____

25      [13]Petitioner contends that complete similarity is not required, relying on the statement in *Miller-El* that
    "potential jurors are not products of a set of cookie cutters."  545 U.S. at 247 n.6, 125 S.Ct. at 2329 n.6.  Yet,
26  staying with a comparable metaphor, the comparison that he seeks to draw clearly was not apples to apples.

27      [14]See text, *supra*, at 9.

28      [15]See #36, Ex. 39, at 341.

1    In this same vein, petitioner urges that Wilson never stated that making alternate

2    arrangements for the Thursday would have presented any unusual difficulty.  Yet the record

3    does not establish that the single parent did in fact have the ability to make such

4    arrangements.  Petitioner has the burden of proof both on pretext and generally on federal

5    habeas review.  Petitioner cannot carry his burden on pretext – particularly following the

6    conclusory arguments that he made in the state courts – based on nothing more than

7    unbridled speculation.  Petitioner never presented an actual factual record belying the State's

8    concern on the basis that the single parent in fact could have made suitable arrangements

9    for the care of her child on Thursday, January 20, 2000.

10    Ruffin contends, second, that the prosecutor's concern that Wilson thought trial

11    counsel's face was familiar was pretextual and, third, that the prosecutor's concern that she

12    laughed and was trying to curry favor with defense counsel was pretextual.

13    The Court has combined the discussion of these two contentions because Ruffin seeks

14    to split off into two different reasons what in truth was only one stated reason.  What the

15    prosecutor stated was as follows:

16    . . . .  She stated, when she was talking with Mr. Walton [for the
      defense], that his face was very familiar, that I felt as though she
17    laughed immaturely and inappropriately while he was talking with
      her, which indicated to me that she was trying to kind of curry
18    favor with him.

19    #36, Ex. 38, at 149-50.  Compare to #35, Ex. 36, at 49 (related voir dire).

20    A concern that a prospective juror has an affinity or predisposition favoring opposing

21    counsel is not an invalid rationale for exercising a peremptory strike.  A tendency to place

22    more credence in those for whom one has an affinity for or predisposition toward is not

23    uncommon.

24    Here, petitioner once again urges that the prosecutor "misrepresented" the record

25    because the prosecutor said that Wilson said that defense counsel's face was "very familiar"

26    whereas she only said that his face "looks familiar."  Once again, a showing neither of pretext

27    for racial discrimination nor of an objectively unreasonable application of *Batson* is

28    demonstrated by such minutiae.

-13-

1    Petitioner further urges that the prosecutor neither sought to strike Wilson for cause

2    nor asked her follow up questions regarding her interaction with the defense lawyer.  The

3    State clearly did not have to seek to excuse a juror for cause in order to have a

4    nondiscriminatory reason for exercising a peremptory strike.  Expecting counsel to ask

5    questions as to whether and why a prospective juror appeared to him to be exhibiting an

6    affinity toward counsel and/or why she laughed would be ludicrous.  Such a pointless line of

7    inquiry would risk alienating more than just the one prospective juror in question.[16]

8    Further, merely because a juror arguably had other attributes that might be desirable

9    in a juror for the State does not render the prosecutor's stated reasons for striking the juror

10   a pretext for racial discrmination.[17]

11   Finally, petitioner urges that the prosecutor's statement as to Wilson's reaction to

12   defense counsel is the only evidence that any such alleged behavior happened.  A court

13   reporter of course does not note every laugh or the inflection in a speaker's voice.  Nor does

14   a court reporter make assessments in the transcript of the personal interaction between

15   lawyers and prospective jurors.  There is a reason why a *Batson* challenge must be raised

16   contemporaneously.  The trial judge is in the best position to assess not only the prosecutor's

17   credibility but also whether the prosecutor's stated perceptions corresponded to what actually

18   transpired in the courtroom during voir dire.  *See Haney v. Adams*, 641 F.3d 1168, 1172 (9th

19   Cir. 2011).  The trial judge in this case – who also observed the demeanor of Wilson during

20   voir dire – accepted the prosecutor's reasons as nonpretextual, and defense counsel

21

22   [16]Such a situation clearly is distinguishable from, for example, *Kesser*, where the prosecutor
23   reasonably could have inquired to determine whether the prospective juror's emotional response was due to
     her feelings about "the system" or instead due to what had happened to her daughter.  *See* 465 F.3d at 364.
24
     [17]Petitioner relies on the facts that Wilson was a mother of two, that she worked for the county, that
25   she was friendly with a police officer at her church, and "most importantly," that she was a victim of a burglary
     – "the very crime" for which Ruffin was on trial.  #54, at 17.  These rather "vanilla" facts hardly establish that
26   the State struck an otherwise solid juror for the State on the basis of race.  The Court further would note that
     Ruffin's burglary was based upon entering a casino to pickpocket.  Wilson was the victim of a burglary in
27   which someone forcibly broke into her home. #35, Ex. 36, at 46-47.  While both crimes were burglaries, the
     description of the burglary of Wilson's home as "the very crime" for which Ruffin was on trial overstates the
28   case.

1  presented no specific argument at the time challenging either the prosecutor's stated
2  assessment of Wilson's demeanor or the trial judge's finding.  Merely because the court
3  reporter did not include corroborating statements in the transcript that "juror laughed
4  inappropriately" or "juror appeared to have an affinity for defense counsel" does not
5  undermine the trial judge's contemporaneous assessment of the reasons stated by the
6  prosecutor.

7      The record in this case presents nothing remotely near the compelling record of pretext
8  that was present in *Miller-El* and the circuit cases relied upon by petitioner in his filings.
9  Instead, after presenting only the most conclusory of arguments in the state courts, petitioner
10 thereafter has strained through the state court record on federal habeas review trying to pull
11 different inferences out of a sparse record.  Nothing in the showing made in this Court
12 demonstrates either that the state supreme court's rejection of the claim was contrary to or
13 an unreasonable application of clearly established federal law or that its decision was based
14 upon an unreasonable determination of fact.[18]

15     Ground 1 therefore does not provide a basis for federal habeas relief.

16     ### Ground 8: Effective Assistance of Trial Counsel – Equal Justice Jury Charge

17     In Ground 8, petitioner alleges that he was denied effective assistance of counsel in
18 violation of the Sixth and Fourteenth Amendments when trial counsel failed to object – at the
19 January 2000 trial – to the final instruction given to the jury.  He contends that the instruction
20 improperly minimized the State's burden of proof, denying him constitutional guarantees of
21 due process, equal protection, trial before an impartial jury and a reliable sentence.[19]

22     The final instruction, which served as a segue to closing arguments, read:

23         Now you will listen to the arguments of Counsel who will
           endeavor to aid you to reach a proper verdict by refreshing in
24         your minds the evidence and by showing the application thereof

26     [18]As the state court decision withstands review on the particularized arguments presented in federal
court, it clearly withstands review on the conclusory arguments actually presented to the state courts.

27     [19]See # 49, at 31-32 (second amended petition); #54, at 55-58 (reply).  The Court is ordering an
28 evidentiary hearing as to the exhausted claims that remain in Grounds 2, 3, 5, 6 & 7.  See text, *infra*, at 35-40.

to the law; but whatever Counsel may say, you will bear in mind that it is your duty to be governed in your deliberation by the evidence as you understand it and remember it to be and by the law as given you in these instructions, with the sole, fixed and steadfast purpose of doing equal and exact justice between the Defendant and the State of Nevada.

#36, Ex. 41, Instruction No. 18.

The jury charges otherwise contained instructions stating that the defendant was presumed to be innocent unless proved otherwise and that the State had the burden of proving every element of the crimes charged beyond a reasonable doubt.[20]  Petitioner does not contend – in these proceedings – that these instructions failed to properly state the State's burden to prove all of the elements of the offenses charged beyond a reasonable doubt.[21] The first instruction clearly directed jurors – at the very outset – that "you are not to single out any certain sentence or any individual point or instruction and ignore the others, but you are to consider all the instructions as a whole and regard each in the light of all the others."[22]

Petitioner contends herein that Instruction No. 18 improperly minimized the State's burden of proof when it used the phrase: "with the sole, fixed and steadfast purpose of doing equal and exact justice between the Defendant and the State of Nevada."

As discussed, *infra*, as to the other claims of ineffective assistance of trial counsel, the Court reviews this claim *de novo* rather than under AEDPA deferential review because the state supreme court misstated the applicable prejudice standard.  See text, *infra*, at 35-40.

---

[20]#36, Ex. 41, Instruction No. 5.

[21]In the federal reply, petitioner notes the Ninth Circuit's holding in *Ramirez v. Hatcher*, 136 F.3d 1209 (9th Cir. 1998), that the reasonable doubt instruction used in this case passes constitutional muster.  Petitioner maintains that the *Ramirez* panel nonetheless "was less than enthusiastic" about some of the language in the Nevada reasonable doubt instruction. #54, at 57 n.25.  Even on a *de novo* review in a federal habeas matter, a federal court does not have authority to vacate a conviction based upon what the court either is or is not "enthusiastic about."  Petitioner either is – or is not – challenging the federal constitutional adequacy of the reasonable doubt instruction in this proceeding.  No claim challenging the constitutional adequacy of the reasonable doubt instruction was presented in the second amended petition.  Petitioner of course may not use the federal reply to raise such a claim for the first time, and he does not appear to be seeking to do so here.  The constitutional adequacy of the reasonable doubt instruction in Instruction No. 5, at bottom, is not challenged herein.

[22]*Id.*, Instruction No. 1.

1    On *de novo* review, Ground 8 does not provide a basis for federal habeas relief.

2    On a claim of ineffective assistance of counsel, a petitioner must satisfy the two-

3  pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

4  (1984). He must demonstrate that: (1) counsel's performance fell below an objective standard

5  of reasonableness; and (2) counsel's defective performance caused actual prejudice. On the

6  performance prong, the issue is not what counsel might have done differently but rather is

7  whether counsel's decisions were reasonable from his perspective at the time.  The  court

8  starts from a strong presumption that counsel's conduct fell within the wide range of

9  reasonable conduct.  On the prejudice prong, the petitioner must demonstrate a reasonable

10  probability that, but for counsel's unprofessional errors, the result of the proceeding would

11  have been different.  *E.g., Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

12    On the performance prong, the question is not what counsel might have done

13  differently but rather is whether counsel's decisions were reasonable from his perspective at

14  the time.  In this regard, the reviewing court starts from a strong presumption that counsel's

15  conduct fell within the wide range of reasonable conduct.  *Strickland*, 466 U.S. at 689, 104

16  S.Ct. at 2065.  That is, there is a strong presumption that counsel acted for tactical reasons

17  rather than through sheer neglect.  *Pinholster*, 131 S.Ct. at 1404.  The reviewing court

18  therefore must not simply give counsel the benefit of the doubt but instead must affirmatively

19  entertain the range of possible reasons counsel may have had for proceeding as they did.

20  131 S.Ct. at 1407.  In so doing, the reviewing court inquires into only the objective

21  reasonableness of counsel's performance, not counsel's subjective state of mind.  *Id.*

22    On the prejudice prong, as a general matter under *Strickland*, the petitioner must

23  demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result

24  of the proceeding would have been different.  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

25  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

26  *Id.*  A reasonable probability requires a "substantial," not just a "conceivable," likelihood of a

27  different result.  *Pinholster*, 131 S.Ct. at 1403.

28    / / / /

1    In the present case, trial counsel did not render deficient performance when he did not

2    object at the January 2000 trial to Instruction No. 18, and petitioner was not prejudiced by his

3    decision to not challenge the instruction.  Such an objection had no chance of success.

4    Such an objection clearly had no chance of success in the Nevada state courts at the

5    time of the January 2000 trial.  The Supreme Court of Nevada rejected a similar challenge to

6    the charge in 1998 in *Leonard v. State*, 114 Nev. 1196, 1209, 969 P.2d 288, 296 (1998).  The

7    state high court has rejected comparable challenges to the instruction multiple times

8    thereafter.[23]  Counsel thus would have been making an objection that was clearly and wholly

9    foreclosed in the Nevada courts by controlling state supreme court precedent.

10   Even looking beyond the state of the law in the state courts in January 2000 to later

11   federal review, this Court finds the underlying substantive argument unpersuasive.  The

12   instruction – even in isolation – does not lower the State's burden of proof but instead directs

13   the jury to provide equal and impartial justice under the law.  Indicating that the parties stand

14   equal before the court and the jury does not in any sense signify the applicable burden of

15   proof.  Jury instructions in any event are to be read as a whole, and the charges as a whole

16   clearly instructed the jury properly as to the applicable burden of proof.  Petitioner's argument,

17   at its very level best, is a strained one that does not demonstrate that there was a reasonable

18   probability that, but for counsel's failure to object to the charge, the result of the proceeding

19   would have been different.  Petitioner cites no apposite federal authority, whether on the

20   books in January 2000 or otherwise, holding that the instruction offends the Constitution.[24]

21

22   [23]*See,e.g., Thomas v. State*, 120 Nev. 37, 46, 83 P.3d 818, 824 (2004); *Leonard v. State*, 117 Nev.
23   53, 78, 17 P.3d 397, 412-13 (2001).  Petitioner suggests that the *Leonard* decision cited in the text did not
     contain a detailed analysis. See #54, at 56.  It would appear to this Court that the *Leonard* court gave this
24   strained argument the amount of discussion to which it was due.  This Court is reviewing constitutional claims
     not critiquing the degree of articulation in state court decisions.  The United States Supreme Court decisions
25   cited by petitioner are inapposite, such that a detailed discussion of the cases is not necessary to reject the
     claim.  The Court notes in passing that the language in the instruction that petitioner challenges had been
26   used in Nevada courts for nearly a century, quite possibly longer, at the time of Ruffin's trial.  *See State v.*
     *Buralli*, 27 Nev. 41, 71 P. 532, 535 (1903).

27   [24]This Court previously has rejected federal habeas claims premised upon the instruction being

28   (continued...)

-18-

1    On *de novo* review, Ground 8 therefore does not provide a basis for federal habeas

2    relief.   Counsel's performance was not deficient, and petitioner has not demonstrated

3    resulting prejudice from the failure to raise the meritless objection.

4    **Ground 9: Effective Assistance of Appellate Counsel – Sufficiency of the Evidence**

5    In Ground 9, petitioner alleges that he was denied effective assistance of counsel in

6    violation of the Sixth and Fourteenth Amendments when appellate counsel failed to argue on

7    direct appeal that the evidence was insufficient to support a finding of the requisite intent for

8    a burglary conviction.   Petitioner maintains, in particular, that there was no evidence that he

9    entered the New York-New York with the intent to commit a felony.[25]

10   Petitioner does not contend as to Ground 9 that the state supreme court failed to apply

11   the correct standard of prejudice under *Strickland*.[26]

12   Petitioner contends, however, that the state supreme court's decision is accorded "less

13   deference" under the AEDPA because the court allegedly did not articulate a "reasoned

14   explanation" for rejecting the claim.   Whatever merit this contention may have had under Ninth

15   Circuit precedent at the time of the federal reply herein, it clearly has no merit now.   In

16   *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme

17   Court emphatically rejected any notion that a summary rejection of a claim was entitled to less

18   deference on AEDPA review.   The Supreme Court held that "[w]here a state court's decision

19   is unaccompanied by an explanation, the habeas petitioner's burden still must be met by

20   showing there was no reasonable basis for the state court to deny relief."   131 S.Ct. at 784.

21   / / / /

22

23 —————————————————

24   [24](...continued)
     unconstitutional, and it has denied a certificate of appealability on the issue.  *See, e.g., Riley v. McDaniel*, No.
     3:01-cv-00096-RCJ-VPC, 2010 WL 3786070, slip op. at 48-49 (D. Nev., September 20, 2010)(capital case;

25   appeal pending).

26   [25]See # 49, at 32-34 (second amended petition); #54, at 58-63 (reply).

27   [26]See #38, Ex. 110, at 6 (the  state supreme court rejected the claim of ineffective assistance of
     appellate counsel because "there is no reasonable likelihood that [the underlying substantive claim] would

28   have been successful on direct appeal").

1    The *Harrington* Court made it clear that satisfying this burden is every bit as difficult

2    in a case with a summary denial as it is in a case with a fully-articulated decision:

3
4          If this standard is difficult to meet, that is because it was
           meant to be.  As amended by AEDPA, § 2254(d) stops short of
5          imposing a complete bar on federal court relitigation of claims
           already rejected in state proceedings.  *Cf. Felker v. Turpin*, 518
6          U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)
           (discussing AEDPA's "modified res judicata rule" under § 2244).
7          It preserves authority to issue the writ in cases where there is no
           possibility fairminded jurists could disagree that the state court's
8          decision conflicts with this Court's precedents.  It goes no farther.
           Section 2254(d) reflects the view that habeas corpus is a "guard
9          against extreme malfunctions in the state criminal justice
           systems," not a substitute for ordinary error correction through
10         appeal.  *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct.
           2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in
11         judgment).  As a condition for obtaining habeas corpus from a
           federal court, a state prisoner must show that the state court's
12         ruling on the claim being presented in federal court was so
           lacking in justification that there was an error well understood and
13         comprehended in existing law beyond any possibility for
           fairminded disagreement.

14   131 S.Ct. at 786-87.

15    Under this standard of review, the state supreme court's rejection of this claim of

16   ineffective assistance of appellate counsel was neither contrary to nor an unreasonable

17   application of clearly established federal law.

18    When evaluating claims of ineffective assistance of appellate counsel, the performance

19   and prejudice prongs of the *Strickland* standard substantially overlap.  *E.g., Bailey v.*

20   *Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th

21   Cir. 1989).  On the one hand, the failure to present a weak argument on appeal neither falls

22   below an objective standard of competence nor causes prejudice to a petitioner for the same

23   reason – because the omitted issue had little or no likelihood of success.  *Id.*  On the other,

24   the failure to present a strong issue on appeal can both constitute deficient performance and

25   cause prejudice also for the same reason – because appellate counsel failed to pursue an

26   issue that had a reasonable probability of changing the outcome of the proceeding.

27   Accordingly, the court looks to the merits of the omitted issue to properly address the

28   ineffective assistance claim.  *E.g., Moormann v. Ryan*, 628 F.3d 1102, 1106-07 (9th Cir. 2010).

1    Looking to the underlying substantive claim, a challenge on direct appeal to the
2  sufficiency of the evidence of the requisite intent on the burglary charge would have had little
3  or no likelihood of success on appeal.

4    On a challenge to the sufficiency of the evidence, the habeas petitioner faces a
5  "considerable hurdle."  *Davis v. Woodford*, 333 F.3d 982, 992 (9th Cir. 2003).  Under the
6  standard announced in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560
7  (1979), the jury's verdict must stand if, after viewing the evidence in the light most favorable
8  to the prosecution, any rational trier of fact could have found the essential elements of the
9  offense beyond a reasonable doubt.  *E.g., Davis*, 333 F.3d at 992.  Accordingly, the reviewing
10  court, when faced with a record of historical facts that supports conflicting inferences, must
11  presume that the trier of fact resolved any such conflicts in favor of the prosecution and defer
12  to that resolution, even if the resolution by the state court trier of fact of specific conflicts does
13  not affirmatively appear in the record.  *Id.*  The *Jackson* standard is applied with reference to
14  the substantive elements of the offense as defined by state law.  *E.g., Davis*, 333 F.3d at 992.

15    The evidence at trial reflected that Ruffin was inside the New York-New York appearing
16  as a well-dressed businessman – with no indication in the record that he was there in such
17  a capacity – carrying a briefcase, which is used as a tool of the trade by pickpockets to
18  conceal the lift.[27]  Thereafter, when the lift apparently occurred, during the second of Ruffin's
19  two elevator rides with Diana Stubenrauch, Ruffin raised the briefcase – with no other
20  apparent purpose – in a manner employed by pickpockets to conceal their action.[28]  It is not
21  inconceivable – in the sense that anything is possible under the sun – that perhaps Ruffin
22  woke up that day and just decided to dress to the nines and go down to the New York-New
23  York with a briefcase, hatching the idea to pickpocket only after he arrived.  The jury,
24  however, permissibly could draw the reasonable inference from the circumstantial evidence
25  that he entered the New York-New York dressed that way with a briefcase so that he would

26  _____

27    [27]#36, Ex. 38, at 172-74, 183-84 & 194 (Diana Stubenrauch); *id.*, Ex. 39, at 283-85  (Detective
Carolyn Wolfe); *id.*, at 291-96 (Detective Ralph Ray, testifying as an expert witness).

28    [28]#36, Ex. 39, at 293-96 (Detective Ray).

1   blend in with the crowd and cover his actions in pursuance of a prior intent to pick pockets.

2   On sufficiency review under *Jackson v. Virginia*, the reviewing courts must presume that the

3   jury resolved the competing inferences in the State's favor.

4        The state supreme court's rejection of the claim of ineffective assistance of appellate

5   counsel thus was neither contrary to nor an unreasonable application of clearly established

6   federal law as determined by the United States Supreme Court.   This Court cannot say that

7   the state court's ruling was so lacking in justification that there was an error well understood

8   and comprehended in existing law beyond any possibility for fairminded disagreement.

9        Ground 9 therefore does not provide a basis for federal habeas relief.[29]

10        **Ground 10: Double Jeopardy Challenge to Habitual Criminal Adjudication**

11        In Ground 10, petitioner alleges that he was subjected to double jeopardy in violation

12   of the Fifth and Fourteenth Amendments after the state supreme court vacated and

13   remanded his original habitual criminal adjudication and sentencing for a second sentencing

14   proceeding where he again was adjudicated a habitual criminal.   The state supreme court

15   remanded for a second sentencing proceeding because the state district court clerk was not

16   able to locate the prior convictions from the original proceeding.   Petitioner contends that

17   there was insufficient evidence supporting the original habitual criminal adjudication and that

18   he therefore was subjected to double jeopardy in the second sentencing proceeding.[30]

19        At the original sentencing proceeding, the State, indisputably, presented certified

20   copies of New Jersey judgments of conviction reflecting 12 prior felony convictions, including

21   convictions on multiple counts entered the same date.[31]   The State further presented

22   evidence from two witnesses seeking – through their combined testimony – to establish that

---

24      [29]Petitioner requests an evidentiary hearing on this issue.  *Pinholster* of course forecloses such a

25   hearing on this claim because the claim was adjudicated on the merits and is entitled to AEDPA deference.
The issue in any event is one that is resolved by reference to the trial evidence.  There is no issue for an

26   evidentiary hearing.

27      [30]See # 49, at 34-39 (second amended petition); #54, at 63-65 (reply).

28      [31]#36, Ex. 47, at 2, lines 16-19; at 3, lines 18-20, at 4, lines 10-11; at 20, lines 20-24; and at 21, lines
1-12.  The State introduced 12 -- not 13 or a different number -- prior convictions.  *Id.*

1    Ruffin was the same individual as the individual convicted in New Jersey.  Convictions within

2    the group presented were under different names or aliases.

3        Detective Ralph Ray testified, *inter alia*, that he had reviewed a "Scope" printout and

4    a National Crime Information Center (NCIC) return.  A Scope printout is a computerized

5    criminal history information document maintained by the Las Vegas Metropolitan Police

6    Department ("Metro").  Detective Ray testified that the Federal Bureau of Investigation (FBI)

7    would assign an "FBI number" to an individual based upon fingerprint comparison.  All

8    convictions reported to the FBI for an individual who matched the same fingerprints then

9    would be assigned that same FBI number.  A single individual on occasion might be assigned

10   more than one FBI number, if the link was not made initially to the individual's prior

11   convictions, under a different name or alias, with the same fingerprints.  However, Detective

12   Ray had not encountered any two different individuals having the same FBI number, given

13   that the FBI number was based upon a comparison with the individual's fingerprints.[32]

14       Detective Ray acknowledged that the Scope and NCIC materials were not certified

15   documents although they were documents that were used and maintained in the normal

16   course of business by the police department.  He further acknowledged the general

17   proposition that "[i]t's possible for people to make mistakes."[33]

18       Detective Ray did not affirmatively and explicitly testify that Ruffin was the same

19   individual as the individual convicted in the 12 New Jersey convictions.  It appears that he was

20   called primarily as a background witness as to the significance of the FBI number on

21   documents that were before the sentencing court and to cover other related points.  The

22   State's next witness, Penny Mosier, provided the testimony affirmatively and explicitly linking

23   Ruffin to the 12 New Jersey convictions.

24       Penny Mosier was an investigative specialist with Metro.  Mosier compared the

25   fingerprints from the FBI return for, *inter alia*, the 12 New Jersey convictions to Ruffin's

26

27       [32]#36, Ex. 47, at 5-8, 9-10 & 15-16.

28       [33]#36, Ex. 47, at 11-16

-23-

1   fingerprints.  The fingerprints matched.  She accordingly concluded that Ruffin was the same

2   individual as the individual convicted in the 12 New Jersey convictions.  Mosier acknowledged

3   that the FBI return was not a certified document.[34]

4       The state district court adjudicated Ruffin a habitual criminal, and no challenge to the

5   habitual criminal adjudication was raised on direct appeal.

6       Petitioner thereafter challenged the habitual criminal adjudication in a motion to modify

7   sentence and in his state post-conviction petition.  In the motion, he maintained that the

8   district court had relied upon uncertified and constitutionally infirm judgments of conviction.

9   In the petition, he maintained, *inter alia*, that trial counsel had rendered ineffective assistance

10  of counsel for not adequately challenging the judgments of conviction relied upon by the

11  district court and that appellate counsel rendered ineffective assistance of counsel for not

12  raising any issues challenging the habitual criminal adjudication on direct appeal.[35]

13      In a consolidated appeal, the Supreme Court of Nevada sought to obtain the copies

14  of the prior judgments of conviction from the state district court clerk.  The clerk, however, was

15  not able to locate the judgments.  The Supreme Court of Nevada accordingly took the

16  following action:

17

18      . . . . The records transmitted to this court in response to
    [its] directives reveal that at Ruffin's sentencing hearing the State

19  presented the district court with copies of Ruffin's prior judgments
    of conviction.  The records before this court, however, do not

20  contain copies of those prior judgments of conviction.  Nor does
    it appear that these documents are presently part of the records

21  maintained by the clerk of the district court.

22      The Office of the Clark County Clerk has informed the
    clerk of this court that it is unable to locate any of these

23  documents and is "at a loss as to what might have happened to
    these exhibits."  The State has informed this court that it can only

24  locate in its internal files some of the prior judgments of conviction
    originally presented as evidence below.  Although the State has

25  submitted copies of the available judgments directly to this court
    under seal, the documents have not been reviewed or

26  authenticated by appellant or the district court.

27

28

---

[34] #36, Ex. 47, at 16-19 & 21-24.

[35] See #38, Ex. 110, at 2.

1

2

3          Without a complete record containing copies of the prior
       judgments of conviction admitted into evidence and relied upon
       by the district court in adjudicating Ruffin a habitual criminal, we
       are unable to conduct a meaningful review of the district court's
       orders resolving the claims Ruffin presented below attacking his
       habitual criminal adjudication.[FN3] Under these circumstances,
       we have concluded that Ruffin's sentence must be vacated, and
       this matter must be reversed in part and remanded for a new
       sentencing hearing.  The district court shall appoint counsel to
       represent Ruffin and conduct a new sentencing hearing in which
       the State, in its discretion, may again seek habitual criminal
       adjudication.[FN4] The district court shall insure that a complete
       and accurate record is compiled below and that all exhibits,
       including certified copies of all prior criminal conviction admitted
       or presented as evidence by the State, are properly marked and
       included in the record.  In light of our conclusions in this respect,
       we dismiss as moot Ruffin's appeal . . . from the district court's
       order denying his motion to modify his sentence.

           [FN3] See Lopez v. State, 105 Nev. 68, 84-85, 769
           P.2d 1276, 1287 (1989)(recognizing that
           "meaningful, effective appellate review depends
           upon the availability of an accurate record covering
           lower court proceedings relevant to the issues on
           appeal"); Daniel v. State, 119 Nev. ___, ___, 78
           P.3d 890, 897 (2003).

           [FN4] This court's prior decisions in Crutcher v.
           District Court, 111 Nev.1286, 903 P.2d 823 (1995),
           and Robertson v. State, 109 Nev. 1086, 863 P.2d
           1040 (1993), overruled on other grounds by Krauss
           v. State, 116 Nev. 307, 998 P.2d 163 (2000), are
           distinguishable. Here, the State filed a timely notice
           of intent to seek habitual criminal adjudication and
           presented the district court with copies of prior
           judgments of conviction at Ruffin's sentencing
           hearing.  For reasons unknown, however, these
           documents have been lost or misplaced through no
           apparent fault of the State.

21  #38, Ex. 110, at 3-4.

22      On remand, the State again sought habitual criminal adjudication, presented certified

23  copies of judgments from 11 prior convictions at the second sentencing, and sought to

24  incorporate the testimony and evidence presented at the first sentencing proceeding seeking

25  to establish that Ruffin was the same individual as the individual in the prior convictions.  The

26  State represented that it instead would subpoena the witnesses again and present its

27  evidence linking Ruffin to the prior convictions if the prior evidentiary showing was not going

28  to be incorporated by reference.  #38, Ex. 122, at 8-13.

Ruffin, through counsel, did not contest the State's incorporation of the evidentiary showing from the first sentencing in order to establish that he was the same individual as the individual in the prior convictions.  Indeed, petitioner, through counsel, accepted the finding from the prior sentencing that he was the same individual, stated on the record that the defense did not want to have another identification hearing, and stated that the defense instead wanted to proceed forward that day on that basis.  Counsel stated:

> Well, I think you did so now [*i.e.,* incorporated the evidentiary showing on identification from the prior sentencing]. If the Court is willing to accept that his identification was satisfied to the extent that Judge Lehman did after Mr. Hein called several witnesses, we're prepared to go forward having determined that Mr. Ruffin was operating under certain AKAs.
>
> . . . .
>
> Judge, and I could just according to what you've just ordered then, my [client] for the record I just asked him if he wanted to have a request, because the Court would have to grant us that motion, a hearing similar to the one Mr. Hein filed to determine that he's actually the individual in the judgment of conviction.
>
> For the record and the state I believe has been courteous in noting that Judge Lehman has already determined that fact through witnesses.
>
> In light of your Honor's ruling and I have to make a clear record for appeal.
>
> . . . . .
>
> But for purposes of appeal, my client indicated he wanted to go forward today.  *He didn't want to have a identification hearing.*

#38, Ex. 122, at 10 & 12-13 (emphasis added).

The defense thus did not challenge the State's identification evidence from the prior sentencing and – on the record – affirmatively made a decision to not have a hearing in which Ruffin would challenge the State's showing of identity.

Instead, the defense challenged whether a habitual criminal adjudication was appropriate due to the nature of the prior convictions – without challenging that Ruffin in fact was the individual convicted in those prior convictions.  #38, Ex. 122, at 15-18.

-26-

On the ensuing appeal from the amended 2005 judgment of conviction, which was a direct appeal from the second judgment of conviction, petitioner contended, *inter alia,* that the second habitual criminal adjudication violated the Double Jeopardy Clause.  He argued only the following specific factual basis:

> . . . .  Here, this Honorable Court issued its Order that Ruffin be re-sentenced precisely because the record was bereft of evidence that the Sate had proved Ruffin had any prior convictions at his first sentencing. . . . .  However, because the State could not permissibly prove Ruffin's prior convictions at his second hearing consistent with the double jeopardy clause of the United States Constitution, Ruffin's sentencing must be vacated.

#38, Ex. 142, at 6.

Ruffin did not articulate a specific factual argument that the Double Jeopardy Clause had been violated because the State allegedly had failed to prove that he was the same individual as the individual in the prior convictions at the first sentencing hearing.

The Supreme Court of Nevada rejected the claim presented to that court on the following basis:

> . . . Ruffin contends that the district court erred by resentencing him in violation of the Double Jeopardy Clause.[FN7] Ruffin claims that the Double Jeopardy Clause bars a second sentencing hearing when the evidence presented at the first sentencing hearing was insufficient to support a habitual criminal adjudication.[FN8] However, that is not what happened here.  The record reveals that sufficient evidence was presented at the first sentencing hearing to support Ruffin's habitual criminal adjudication.  Thereafter, the copies of the prior judgments of conviction that the district court relied upon to adjudicate Ruffin a habitual criminal could not be found, and without them we were unable to conduct a meaningful review of Ruffin's habitual criminal adjudication claims of error.  Consequently, we ordered a new sentencing hearing so that the district court could compile a complete and accurate record, to include certified copies of all prior criminal convictions admitted into evidence.  Under these circumstances, the district court did not err.
>
> [FN7] See U.S. Const. amend. V; Nev. Const. Art. 1 § 8.
>
> [FN8] Ruffin cites to Bullard v. State, 665 F.2d 1347 (5th Cir. 1982), vacated, 459 U.S. 1139 (1983).

#38, Ex. 145, at 4-5.

/ / / /

1    In federal Ground 10, petitioner alleges that he was subjected to double jeopardy in

2  the second habitual criminal adjudication because the evidence was insufficient at the first

3  habitual criminal adjudication.   He alleges, specifically, that "[b]ecause it is based on

4  uncertified criminal history records, Ms. Mosier's identification testimony is insufficient under

5  Nevada law to prove the predicate felonies necessary to enhance Ruffin to habitual criminal

6  status."[36]  Petitioner contends that "[p]erhaps most illustrative of such evidence's insufficiency

7  is the fact that no Scope printouts, NCIC printouts or FBI returns were filed with respect to the

8  second sentencing hearing."[37]   Thus, although Ruffin in truth acceded to the use of the

9  identification evidence from the first sentencing to establish identification at the second

10  sentencing, he now argues on federal habeas review that the evidence was insufficient at the

11  first sentencing to establish identification because the State relied upon uncertified

12  documents.

13    The Court will assume, *arguendo*, that Ground 10 is exhausted, although the claim

14  presented in federal court arguably is diametrically opposed to the position taken and tactical

15  decision made by Ruffin at the second sentencing on the identification issue.[38]

16    / / / /

17

18    [36]#49, at 38.

19    [37]*Id.*  On this point, counsel, at the very least, needs to read the state court record with more care.
20  The state court record establishes indisputably that the State did not present such evidence at the second
    sentencing hearing because (a) the identification evidence from the first hearing was incorporated at the
21  second hearing and (b) petitioner affirmatively made a decision on the record to not request a second hearing
    on the identification issue in lieu of the first.  See text, *supra*, at 26.  The suggestion that the State did not
22  present such evidence at the second sentencing hearing as an implicit concession that such evidence was
    insufficient is belied by the record.  Indeed, the State *incorporated the very same evidence on the point*.
23  Counsel should assume that the Court will read the pertinent portions of the state court record.  Making
    arguments that are directly belied by that record is, at best, unpersuasive.

24
    [38]Respondents did not challenge the exhaustion of Ground 10.  The argument could be made that
25  Ground 10 as presented in federal court is exhausted because the claim does not fundamentally alter the
    claim presented to the state courts.  A potential difficulty with that argument is that petitioner did not challenge
26  the sufficiency of the identification evidence from the first hearing when it was used by incorporation at the
    second hearing.  Thereafter, not surprisingly, given the stance taken in the state district court, petitioner did
27  not articulate on appeal any specific argument that the evidence was insufficient at the first sentencing
    hearing because the identification evidence was insufficient due to the use of uncertified records.  The Court,
28  however, in any event assumes, *arguendo* that the claim as presented is exhausted.

The state supreme court's court's rejection of the double jeopardy claim was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

Ground 10 is subject to two fundamental flaws.

*First*, petitioner does not cite any apposite authority establishing that the identification evidence presented at the first sentencing hearing was insufficient because the investigative specialist relied upon uncertified documents to conclude that Ruffin's fingerprints matched the fingerprints of the individual convicted in the prior convictions.  Petitioner baldly asserts that the evidence was insufficient because the identification documents were uncertified, but he does not cite any – apposite – authority holding that to be true.

The governing statute articulates no such requirement that any and all documents relied upon for a habitual criminal adjudication must be certified.  Under N.R.S. 207.016, for the purposes of the habitual criminal statutes, "a certified copy of a felony conviction is prima facie evidence of conviction of a prior felony."  N.R.S. 207.016(5).  The statute does not state any requirement, however, that all other documents relied upon in the habitual criminal adjudication must be certified.  The statute instead refers to the court determining "the issue of the previous conviction after hearing all relevant evidence presented."  N.R.S. 207.016(3).

Nevada case authority further undercuts petitioner's unsupported argument that identification of the petitioner as the same individual in the prior convictions may be established only by certified documents.

In *Hollander v. State*, 82 Nev. 345, 418 P.2d 802 (1966), the state high court held as follows with regard to the proof of a prior conviction as a basis for a conviction for an ex-felon in possession of a firearm and a habitual criminal adjudication:

> Our concern, of course, is that an innocent person not be made to suffer for the guilt of another with a similar name. *Ordinarily, positive identity is accomplished by the presentation of photographs, fingerprints, and any other available identity data.* Circumstances in addition to the copy of the conviction should be considered. Such circumstances include uncommon surnames, identity of first names and surnames, *as well as the other factors of fingerprints or photographs*.

-29-

Here, the past conviction together with Hollander's unusual last name, identical first name, and the added weight given a conviction record of the state in which the ex-felon accusation is tried, are considered by us sufficient to justify the jury's conviction.

Referring now to the hearing before the court on the habitual count, *the same applications can be made*.  The State introduced exemplified copies of felony convictions purporting to be those of Hollander.  Five past felonies were charged of which two were admitted by him and three denied.  The State contends that the record of the three prior convictions alone should be sufficient under our statute to convict the appellant of being an habitual criminal.[FN2]

> [FN2]  NRS 207.010(6). 'Presentation of an exemplified copy of a felony conviction shall be prima facie evidence of conviction of a prior felony.'

Some courts hold that proof of a record merely containing defendant's name is not enough to overcome the presumption of innocence.  *People v. Casey*, 399 Ill. 374, 77 N.E.2d 812, 11 A.L.R.2d 865 (1948). Others are satisfied that the earlier records sufficiently establish identity under the habitual criminal acts, that a properly authenticated conviction presumes identity of person as well as name.  *State v. Davis*, 367 S.W.2d 517 (Mo.1963); *Buie v. State of Oklahoma*, 368 P.2d 663 (Okl.Cr.App.1962).

The division of authorities preponderates in favor of allowing the copies to suffice if, *as in the primary charge (that of being an ex-felon in possession of a firearm), further circumstances exist pointing to the defendant's identity of person and name*.  *Here the circumstances that existed in the determination of guilt in the first charge* were augmented by Hollander's admission to two of the convictions.  Sometimes such admissions alone are sufficient to convict.  *State v. Wyckoff*, 27 N.J.Super. 322, 99 A.2d 365 (1953); *State ex rel. Medicine Horn v. Jameson*, 78 S.D. 282, 100 N.W.2d 829 (1960).  We also note 39 Iowa L.Rev. 156 (1953-54). However, we reject that authority which considers the defendant's failure to rebut the presumption created. The responsibility of proof beyond a reasonable doubt remains with the State.

82 Nev. at 348-50, 418 P.2d at 804 (emphasis added).

*Hollander* provides no support for a conclusion that identification documents must be certified documents in order to constitute sufficient evidence for a habitual criminal adjudication in Nevada.  *Hollander* instead establishes that identification may be established by fingerprints or "any other available identity data."  *Hollander* is the only Nevada case cited in this regard by petitioner in the second amended petition and reply.  The case clearly undercuts – not supports – his argument.

-30-

1      Petitioner has the burden of proof and of persuasion on federal habeas review.  He is

2  collaterally challenging a presumptively valid state court judgment of conviction under a

3  "highly deferential"[39] standard of review.  A bald supposition that a legal proposition is true

4  does not provide a basis for overturning a presumptively valid judgment of conviction on

5  federal habeas review.  Petitioner maintains that the identification evidence was insufficient

6  because the documents used by the investigative specialist in identifying Ruffin as the same

7  individual by his fingerprints were not certified.  The question must be asked, however:

8  Where are the, apposite, case citations holding that the investigative specialist's use of

9  uncertified fingerprint documents rendered the identification evidence insufficient?[40]

10      Petitioner has not established that the identification evidence presented at the first

11  sentencing hearing was insufficient to support the habitual criminal adjudication.[41]

_____

13      [39]*Pinholster*, 131 S.Ct. at 1398.

14      [40]Cases upholding a habitual criminal adjudication where certified fingerprint records were introduced
would not necessarily establish that the evidence would be insufficient where uncertified fingerprint records
15  were used.  Petitioner, again, has the burden of proof and persuasion on federal habeas review.  Arguments
as to underlying predicate state law issues – such as the sufficiency of forms of proof on  a habitual criminal
16  adjudication – that are based on unsupported supposition rather than apposite supporting state case law are
insufficient to carry the day on deferential AEDPA review.

18      [41]Petitioner urges that the Nevada Supreme Court's determination on the appeal from the second
adjudication that the first adjudication was supported by sufficient evidence constituted an unreasonable
19  determination of fact under 28 U.S.C. § 2254(d)(2).  This Court is not persuaded.

20      The state supreme court arguably was not even referring to the identification evidence when it made
the determination.  As discussed previously in the text, under a fair reading of petitioner's state court papers,
21  Ruffin's insufficiency argument on the appeal from the 2005 amended judgment of conviction was addressed
to an alleged absence of the certified copies of the prior judgments of conviction at the first sentencing.  See
22  text, supra, at 27.  As to that issue, the state supreme court's determination that the prior judgments had
been presented by the State at the first adjudication but thereafter had been lost through no fault of the State
23  was – amply – supported by the transcript from the first adjudication.

24      In all events, if the state supreme court's determination encompassed a determination specifically
that the identification evidence was sufficient at the first adjudication, that determination also was amply
25  supported by the transcript from the first adjudication.  The loss of the copies of the judgments did not impact
the state supreme court's ability to review the transcript of the first hearing as to that issue.

27      While petitioner suggests that the Supreme Court of Nevada could not reasonably make a finding as
to the sufficiency of the evidence at the first hearing because of the missing copies of the prior judgments, the
28  state court record clearly permitted and supported such a determination, particularly as to the identification

(continued...)

-31-

1      Second, even if this Court were to assume, *arguendo*, that the evidence from the first

2  habitual criminal adjudication was "insufficient," the rejection of the double jeopardy claim was

3  neither contrary to nor an unreasonable application of clearly established federal law as

4  determined by the United States Supreme Court.

5      Historically, the United States Supreme Court has concluded that double jeopardy

6  protections do not apply to sentencing proceedings.[42]  In *Bullington v. Missouri*, 451 U.S. 430,

7  101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), however, the Supreme Court held that the Double

8  Jeopardy Clause prevented a State from again exposing a capital defendant to the death

9  penalty following a remand for a new trial if the defendant had received a noncapital sentence

10  in the first proceeding.

11      In *Monge v. California*, 524 U.S. 721, 728, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615

12  (1998), the Court considered "whether the Double Jeopardy Clause, which we have found

13  applicable in the capital sentencing contest, see *Bullington* . . ., extends to noncapital

14  sentencing proceedings."  524 U.S. at 724, 118 S.Ct. at 2248.  Significantly, *Monge*, just as

15  does the present case, involved a habitual offender sentencing enhancement, in that case

16  under California law.  The Supreme Court held in *Monge* "that *Bullington*'s rationale is

17  confined to the unique circumstances of capital sentencing and that the Double Jeopardy

18  Clause does not preclude retrial on a prior conviction allegation in the noncapital sentencing

19  context."  524 U.S. at 734, 118 S.Ct. at 2253.  The Court – repeatedly – emphasized in

20

21          [41](...continued)

22  issue.  That is, while the missing copies of the prior judgments may have precluded effective review of all of
petitioner's objections to the first habitual criminal adjudication at the time of the earlier appeal, the missing

23  copies did not preclude a finding that the evidence was sufficient at the first hearing when the missing
certified copies had been made of record.  Certified copies had been presented at the first hearing but merely

24  had been lost.  The evidence would have been insufficient at the first hearing on that account only if it
thereafter was established on the remand that the State in fact never had presented the requisite three or

25  more prior convictions – such as if there in fact were no such prior convictions, under any alias, for Ruffin.
The state court record clearly belies such a proposition.

26

27          The Supreme Court of Nevada otherwise is the final arbiter of the state law question of whether the
form of the identification evidence presented at the first hearing was sufficient under Nevada state law.

28          [42]*See,e.g, Monge v. California*, 524 U.S. 721, 728, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615 (1998).

1   *Monge* that *Bullington* was premised upon the case involving *capital* sentencing, stating that

2   "the death penalty is unique," that "*Bullington's* rationale is confined to the 'unique

3   circumstances of a capital sentencing proceeding,'" and that "*Bullington* is an example of the

4   heightened procedural protections accorded capital defendants."  524 U.S. at 732-33m 118

5   S.Ct. at 2252-53.

6       Petitioner acknowledges the holding in *Monge*, which was decided nearly nine years

7   prior to the Nevada Supreme Court's April 2007 decision rejecting his own double jeopardy

8   challenge similarly to a noncapital habitual offender adjudication.  He urges, however:

9

10               The holding in <u>Monge</u>, however, depends upon a distinction between "sentencing factors" and "elements" that the

11       Supreme Court subsequently rejected in <u>Apprendi v. New Jersey</u>, 530 U.S. 466[, 120 S.Ct. 2348, 147 L.Ed.2d 435] (2000) — a

12       case that predates Ruffin's re-sentencing. <u>See United States v. Rosales</u>, 516 F.3d 749, 757 (9th Cir. 2008)(noting that "Apprendi

13       undermined <u>Monge</u>"); [United States v.] <u>Blanton</u>, 476 F.3d [767,] 772 [(9th Cir. 2007)] (same). Although the Supreme Court has not

14       expressly overruled <u>Monge</u>, Ruffin would respectfully submit that it should no longer be followed.

15   #54, at 64.

16       Petitioner's *Apprendi*-based argument collapses of its own weight.  The United States

17   Supreme Court rejected the underlying premise that habitual offender recidivism must be

18   treated as an element of the offense  in *Almendarez-Torres v. United States*, 523 U.S. 224,

19   118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), for purposes of the rule that later would be followed

20   in *Apprendi*.  While the Supreme Court called the continuing vitality of *Almendarez-Torres* into

21   question two years later in *Apprendi*, it nonetheless remains true that *Apprendi* did not

22   overrule *Almendarez-Torres*.   Parties repeatedly have requested that the Ninth Circuit

23   disregard *Almendarez-Torres* based upon *Apprendi* and other subsequent Supreme Court

24   pronouncements.  The Ninth Circuit repeatedly has rejected these entreaties, holding in 2000,

25   2001, 2005, and – critically for this case – again in January 2007, that *Almendarez-Torres*

26   remains binding law until explicitly overruled by the Supreme Court.  *See United States v.*

27   *Martinez-Rodriguez*, 472 F.3d 1087, 1092-93 (9th Cir. 2007); *United States v. Weiland*, 420

28   F.3d 1062, 1079 n.16 (9th Cir. 2005); *United States v. Reyes-Pacheco*, 248 F.3d 942, 944-45

1    (9th Cir. 2001); *United States v. Pacheco-Zepeda*, 234 F.3d 411, 413-14 (9th Cir. 2000).

2    Indeed, the Ninth Circuit held as recently as April 18, 2011, that *Almendarez-Torres* has not

3    been overruled and "remains binding authority."[43]

4         The Supreme Court of Nevada clearly was not required to disregard *Monge*'s express

5    holding that the Double Jeopardy Clause does not apply to a habitual offender adjudication

6    on the basis of *Apprendi* when United States Supreme Court caselaw that "remains binding

7    authority" to this day holds that the existence of prior convictions does not constitute an

8    element of the offense under the rule followed in *Apprendi*.

9         Petitioner in essence would have the courts reviewing his double jeopardy claim refuse

10   to follow a directly apposite United States Supreme Court decision that has not been

11   overruled based upon an argument that itself is foreclosed by another United States Supreme

12   Court decision that also has not been overruled.  Such is not the stuff of which reversals of

13   state convictions are made on deferential AEDPA review.

14        The Court further would note that petitioner's premise that *Monge* turned upon a

15   distinction between sentencing enhancements and offense elements is subject to substantial

16   debate.  Justice O'Connor's opinion for the majority in *Monge* repeatedly stressed the point

17   that *Bullington*'s exception to the longstanding rule that the Double Jeopardy Clause does not

18   apply to sentencing proceedings was "confined to the 'unique circumstances of a capital

19   sentencing proceeding.'" If Ninth Circuit panels have read *Monge* differently in federal criminal

20   cases that did not involve a state habitual offender enhancement, such a reading definitely

21   is not clearly established federal law as determined by the United States Supreme Court that

22   must be followed by a state supreme court.  The Supreme Court of Nevada simply is not

23   bound by Ninth Circuit authority.

24        / / / /

25

26

27   [43]*United States v. Valvovinos-Mendez*, 641 F.3d 1031, 1036 (9th Cir. 2011).  The *Apprendi* holding
     itself stated that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime
     beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

28   doubt."  530 U.S. at 490, 120 S.Ct. at 2362-63 (emphasis added).

1    Accordingly, for a number of reasons, there simply is no way that the Nevada Supreme

2    Court's April 2007 rejection of petitioner's double jeopardy claim could have been either

3    contrary to or an unreasonable application of clearly established federal law as determined

4    by the United States Supreme Court.  On federal habeas review under AEDPA, the federal

5    court "must consider 'arguments that would otherwise justify the state court's result.'" *John-*

6    *Charles v. California*, ___ F.3d ___, 2011 WL 2937945, slip op. at *9 (9th Cir., July 22,

7    2011)(quoting *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 787, 178 L.Ed.2d 624

8    (2011).  Under the directly applicable United States Supreme Court holding in *Monge* – which

9    has not been overruled and may never be overruled on petitioner's *Apprendi* argument – the

10   Supreme Court of Nevada simply could have rejected Ruffin's double jeopardy claim on its

11   face.  The fact that the state supreme court further concluded – with ample record support –

12   that the habitual criminal evidence was sufficient at the first sentencing hearing only further

13   insulates its decision from being overturned on deferential AEDPA review.

14   Petitioner's argument would not be a strained one on *de novo* review, although the

15   Court would not be persuaded that petitioner is entitled to relief on this claim even on *de novo*

16   review.  The argument clearly cannot carry the day, however, on deferential AEDPA review

17   "which demands that state-court decisions be given the benefit of the doubt."  *Pinholster*, 131

18   S.Ct. at 1398 (quoting prior authority).

19   Ground 10 therefore does not provide a basis for federal habeas relief.

20   ***Evidentiary Hearing as to Grounds 2, 3, 5, 6 & 7***

21   The remaining exhausted claims in Grounds 2, 3, 5, 6 and 7 present claims of

22   ineffective assistance of trial counsel.[44]

23   In Ground 2, petitioner alleges in the main that he was denied effective assistance of

24   counsel in violation of the Sixth and Fourteenth Amendments when trial counsel failed to

25   object during voir dire to the state trial court's reference to petitioner's alias.

26

27   _____

28   [44]See #49, at 15-31 (second amended petition); #54, at 19-54 (reply); #65 (order of partial dismissal).
     Grounds 4, 11 and 12 were dismissed without prejudice in their entirety as wholly unexhausted.

1    In the exhausted portion of Ground 3 that remains, petitioner alleges in the main that
2  he was denied effective assistance of counsel in violation of the Sixth and Fourteenth
3  Amendments when trial counsel failed to object to references in the State's witness testimony
4  to a videotape of an apparent pickpocket incident from the Bellagio that was ruled
5  inadmissible late in the trial.

6    In the exhausted portion of Ground 5 that remains, petitioner alleges in the main that
7  he was denied effective assistance of counsel in violation of the Sixth and Fourteenth
8  Amendments when trial counsel failed to object to allegedly unreliable identification testimony
9  by State witness Diana Stubenrauch.[45]

10    In Ground 6, petitioner alleges in the main that he was denied effective assistance of
11  counsel in violation of the Sixth and Fourteenth Amendments when trial counsel failed to
12  object to conduct any pretrial investigation regarding a Circle K videotape.  According to the
13  pleadings, the Circle K store manager, Dan Smolinski, testified that, after a charge was made
14  on the New York-New York victim's credit card at the store, he reviewed a surveillance
15  videotape alleged to be of the transaction.  He testified that he recognized Ruffin on the
16  videotape from prior visits to the store.  Smolinski testified that he gave the videotape to the
17  police.  In the second amended petition, petitioner alleges that responses to federal discovery
18  demonstrate that the police never obtained such a videotape.  He alleges that pretrial
19  investigation would have revealed that the videotape never existed and that Smolinski's
20  associated testimony thus could have been excluded at trial based upon this fact.

21    In the exhausted portions of Ground 7 that remain, petitioner alleges in the main that
22  he was denied effective assistance of counsel in violation of the Sixth and Fourteenth
23  Amendments when trial counsel failed to  conduct investigation that would have produced
24  exculpatory evidence.  Petitioner alleges, in particular, that trial counsel: (a) failed to develop
25  any witnesses for the defense, such as a New York-New York casino bell captain who

27    [45]An included claim that counsel should have objected to her testimony identifying Ruffin in the New
York, New York surveillance video on the basis that it was inadmissible lay opinion was dismissed following
28  upon the Court's holding that the claim was unexhausted.  See #65, at 1-2.

1  potentially could have disputed Diana Stubenrauch's identification of Ruffin as the black male

2  on the elevator; and (b) failed to retain an identification expert who allegedly could have

3  demonstrated that the identifications made by Stubenrauch, Dan Smolinski, and Dolores

4  Harris were inherently untrustworthy.

5      The Supreme Court of Nevada rejected the corresponding claims presented on state

6  post-conviction review on the following grounds:

7          We have carefully reviewed each of the above allegations
          and conclude that Ruffin *failed to show that, but for his trial*
8          *counsel's alleged errors, the results of the trial would have been*
          *different*.   In reaching this conclusion, we note that sufficient
9          evidence supported Ruffin's conviction.  This evidence included:
          the testimony of Diana Stubenrauch, the victim, who positively
10         identified Ruffin as being on an elevator with her prior to her
          wallet disappearing; a security surveillance video corroborating
11         Mrs. Stubenrauch's testimony; the testimony of Dan Smolinksi
          linking Ruffin to the possession and attempted use of Mrs.
12         Stubenrauch's credit card; and considerable other circumstantial
          evidence.  We also note that this court considered the prejudicial
13         impact of the jury's exposure to testimony concerning the Bellagio
          security surveillance video on direct appeal and determined that
14         the issue was without merit. . . . .

15  #38, Ex. 110, at 5 (emphasis added)(citation footnotes omitted).

16      The state supreme court's decision on these claims was contrary to clearly established

17  federal law as determined by the United States Supreme Court.

18      As discussed, *supra*, a petitioner seeking to establish ineffective assistance of counsel

19  must demonstrate both deficient performance and resulting prejudice.  On the prejudice

20  prong, under *Strickland* and its progeny, a petitioner must demonstrate a reasonable

21  probability that, but for counsel's unprofessional errors, the result of the proceeding would

22  have been different.  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  "A reasonable probability

23  is a probability sufficient to undermine confidence in the outcome."  *Id.*   A reasonable

24  probability requires a "substantial," not just a "conceivable," likelihood of a different result.

25  *Pinholster*, 131 S.Ct. at 1403.

26      What a "reasonable probability" requires under *Strickland* decidedly is *not* a probability

27  that is more probable than not.  *See,e.g., Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1243

28  (9th Cir. 2005).  In the present case, the Supreme Court of Nevada applied precisely such a

1   more probable than not standard.  The state high court required Ruffin to demonstrate that

2   but for counsel's errors, "the results of the trial would have been different."  Petitioner was not

3   required under *Strickland*, however, to demonstrate that the result of his trial "would have

4   been different" but for counsel's alleged errors.  He instead was required to demonstrate a

5   probability only "sufficient to undermine confidence in the outcome."  The state supreme

6   court's application of a more-probable-than-not prejudice standard rendered its decision

7   contrary to clearly established Supreme Court precedent.  *Cooper-Smith*, *supra*.  This Court

8   accordingly must review the claims of ineffective assistance of trial counsel *de novo*.  *Id.*

9        The Court additionally would note that the state supreme court's reliance upon the

10   sufficiency of the evidence as a basis for concluding that petitioner could not demonstrate

11   prejudice begged the question as to many claims.

12        For example, Diane Stubenrauch positively identified Ruffin only as having been in the

13   elevator.  She did not see him commit an offense, and the surveillance video shows the man

14   in the elevator only raising his briefcase.  There was no direct evidence of Ruffin actually

15   committing the crime.  A key piece of confirming evidence was Dan Smolinski's testimony

16   offered to establish that Ruffin thereafter tried to use Stubenrauch's credit card at his store.

17   The prosecutor's closing argument emphasized the critical importance of this testimony:

18

19               . . . . You saw what happened, but I guess the most
          important part of this particular count, and the real damning piece
20          of evidence in this particular count is not only that she identifies
          him, but the very next day he is identified as the person trying to
21          use her credit card at a Circle-K store.  Now that, folks, is some
          kind of evidence.  That credit card did not fall out of the sky.  That
22          credit card was stolen out of her wallet and that wallet was stolen
          at New York New York, and he and she were together in that
23          elevator at New York New York.  That, ladies and gentlemen, is
          some strong evidence.

24   #36, Ex. 39, at 321.

25        In Ground 6, Ruffin alleges that counsel was ineffective for failing to effectively

26   challenge Smolinksi's testimony.  It is no answer to this claim to state that, even if counsel

27   rendered deficient performance, petitioner was not prejudiced by the failure to challenge this

28   "real damning piece of evidence" because Stubenrauch positively identified Ruffin as being

-38-

1    in the elevator.  This is not a case where the victim testified that she saw the crime and

2    positively identified the defendant as the offender.  She only positively identified Ruffin as a

3    man that she observed in the elevator at a time prior to when she could not find her wallet.

4    As the prosecutor's closing argument emphasizes, the State relied – quite heavily – on

5    Smolinski's testimony to establish that Ruffin not only was in the elevator with the victim at the

6    relevant time but that he in fact stole her wallet.  Referring to the sufficiency of the evidence

7    to establish a lack of resulting prejudice on this claim thus wholly begs the question, as the

8    claim questions the admission of a central piece of evidence relied upon by the State.

9         This Court need not consider, however, whether the Nevada Supreme Court's

10   application of *Strickland* was an objectively unreasonable one, however.  The state supreme

11   court's decision in all events was contrary to *Strickland* because the court misstated the

12   governing standard for determining prejudice.  *Cooper-Smith, supra*.  As stated above, the

13   Court thus reviews petitioner's claims of ineffective assistance of trial counsel *de novo*.

14        When a state court decision is not entitled to AEDPA deference, there is no bar to a

15   federal evidentiary hearing on the merits under the *Pinholster* decision.  *See* 131 S.Ct. at

16   1401 & 1411 n. 20.  Where 28 U.S.C. § 2254(d)(1) does not bar relief, the availability of an

17   evidentiary hearing in federal court is governed by 28 U.S.C. § 2254(e)(2).  *Id.*

18        Section 2254(e)(2) does not bar a federal evidentiary hearing where the petitioner

19   diligently has sought to develop a factual record in the state courts:

20

21              . . . .[A]  district court evidentiary hearing is not barred if a
             habeas petitioner made "a reasonable attempt, in light of the
22           information available at the time, to investigate and pursue claims
             in state court, [by] at a minimum seek[ing] an evidentiary hearing
             in state court in the manner prescribed by state law." *West v.*
23           *Ryan*, 608 F.3d 477, 484-85 (9th Cir.2010).

24              A habeas petitioner not barred from receiving an
             evidentiary hearing by section 2254(e)(2) is entitled to such a
25           hearing if [he] (1) alleges facts that, if proven, would entitle [him]
             to relief, and (2) shows that [he] did not receive a full and fair
26           hearing in state court.  *Alberni v. McDaniel*, 458 F.3d 860, 873
             (9th Cir.2006); *see also Insyxiengmay v. Morgan*, 403 F.3d 657,
27           669-70 (9th Cir.2005).

28   *Rossum v. Patrick*, 622 F.3d 1262, 1277 (9th Cir. 2010).

In the present case, petitioner clearly, expressly and repeatedly requested an opportunity for discovery and an evidentiary hearing in the state courts, to no avail.[46] Moreover, the state district court denied petitioner's request for discovery and an evidentiary hearing on the basis that N.R.S. 34.370 required petitioner to support his allegations with affidavits, evidence and other documentation.[47]  The Supreme Court of Nevada held – in this case – that the district court erred in relying on this statute because it had no application to state post-conviction petitions filed under N.R.S. 34.720 *et seq*.  The state supreme court concluded, however, that the error nonetheless was harmless because the claims were without merit for the reasons assigned by the state high court.[48]  As discussed above, the Nevada Supreme Court's rejection of the claims of ineffective assistance of trial counsel was contrary to, and likely also an objectively unreasonable application of, *Strickland*.  This Court thus is left with a holding by the Supreme Court of Nevada – the final arbiter of Nevada state law – that the state district court erred when it relied upon N.R.S. 34.370 in denying the petition without the requested evidentiary hearing.  Petitioner clearly did not fail to seek to develop the factual basis for his ineffective assistance claims in the state courts, and he sought an evidentiary hearing "in the manner prescribed by state law."  The Court further concludes that petitioner otherwise has satisfied the remaining requirements for a federal evidentiary hearing stated above.

The Court accordingly will hold an evidentiary hearing on the exhausted claims in Grounds 2, 3, 5, 6 and 7.  In this regard, even if, *arguendo*, the basis for an evidentiary hearing is stronger as to some claims than others, the Court finds that the better course would be to address the prejudice inquiry on all of the remaining claims of ineffective assistance of trial counsel only after considering the evidence presented at the hearing.

/ / / /

---

[46]See #37, Ex. 82, at 1; *id.*, Ex. 87, at 1-2; *id.*, Ex. 88, at 1; *id.*, Ex. 89, at 3; & *id.*, Ex. 100.

[47]See #37, Ex. 89, at 4.

[48]See #38, Ex. 110, at 6-7 n.12.

1       As to the claims addressed herein, Grounds 1, 8, 9 and 10, the Court is not persuaded

2  by petitioner's argument that *Pinholster*'s holding limiting review to consideration only of the

3  state court record may be avoided on the premise that the state court did not grant petitioner's

4  request for an evidentiary hearing.  The state courts also had summarily denied the claims

5  without an evidentiary hearing in *Pinholster*.  *See* 131 S.Ct. at 1396-97.  The holding in

6  *Pinholster* is that only the state court record may be considered in determining whether the

7  state court's decision withstands review under 28 U.S.C. § 2254(d)(1).  131 S.Ct. at 1398-

8  1401.  The criteria for obtaining a federal evidentiary hearing under Section 2254(e)(2) –

9  including the petitioner's diligence in seeking to develop the record in the state courts – do

10  not even come into play if the state court decision withstands such review.  131 S.Ct. at 1399-

11  1401.  Ruffin's suggestion that he can avoid the holding of *Pinholster* by seeking relief instead

12  under Section 2254(d)(2), premised upon the presence of an unreasonable determination of

13  fact, similarly is unpersuasive.  Section 2254(d)(2) even more explicitly limits review to the

14  "evidence presented in the State court proceeding."[49]  Ruffin's reliance upon a dissent in

15  *Pinholster* and upon circuit authority decided prior to *Pinholster* is unpersuasive.

16       Moreover, the underlying claims in Grounds 1, 8, 9 and 10 do not lend themselves to,

17  much less require, an evidentiary hearing for their resolution.

18       IT THEREFORE IS ORDERED that Grounds 1, 8, 9, and 10 are DISMISSED with

19  prejudice on the merits.

20       IT FURTHER IS ORDERED that an evidentiary hearing is scheduled in this matter for

21  __10:00__ a.m. on September ___26__, 2011, in Courtroom___6C__ at the Lloyd D. George

22  Federal Courthouse, 333 Las Vegas Boulevard South, Las Vegas, Nevada, as the remaining

23  claims in Grounds 2, 3, 5, 6 and 7.  The Court will establish certain prehearing procedures

24  and deadlines by a separate order following the issuance of this order.

25

26

27       [49]See 131 S.Ct. at 1400 n.7 ("The additional clarity of § 2254(d)(2) on this point, however, does not detract from our view that § 2254(d)(1) *also* is plainly limited to the state-court record.")(emphasis added).

28  Petitioner's underlying premise that *Pinholster* is avoided, and a federal evidentiary hearing should be held, simply because the state courts did not hold an evidentiary hearing is unsupportable by the decision itself.

1       **IT FURTHER IS ORDERED** that <u>no requests for extensions of time and/or for</u>

2  <u>rescheduling of this matter will be considered except in the most compelling and</u>

3  <u>unavoidable of circumstances</u>.  **The Court intends to resolve this matter by entry of a**

4  **final order and judgment no later than Friday, September 30, 2011.**

5       The Court's alternative dispute resolution procedures remain available to the parties.

6  Counsel may file a joint request for same in the record, and the undersigned then will initiate

7  the process for the alternative dispute resolution procedures then being made available to the

8  parties in advance of the scheduled evidentiary hearing.

9       DATED:    August 4, 2011.

10

11                                             _____

12                                         ROGER L. HUNT
                                       United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-42-