1

2

3

4

5

6 **UNITED STATES DISTRICT COURT**

7 **DISTRICT OF NEVADA**

8

9 KEVIN TYRONE RUFFIN,

*Petitioner*,                                        2:07-cv-00721-RLH-PAL

10

11 vs.                                                    ORDER

12

DIRECTOR NEVADA DEPARTMENT
13 OF CORRECTIONS, *et al.*,

14 *Respondents*.

15

16        This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on

17 respondents' motion (#68) for reconsideration as to the Court's recent order scheduling an

18 evidentiary hearing on the remaining claims of ineffective assistance of trial counsel in

19 Grounds 2, 3, 5, 6 and 7.

20        The Court held, in the course of ordering an evidentiary hearing, that these claims were

21 subject to *de novo* review, pursuant to the following analysis:

22

23        The Supreme Court of Nevada rejected the corresponding
        claims presented on state post-conviction review on the following
        grounds:

24                We have carefully reviewed each of the
        above allegations and conclude that Ruffin *failed to*
25        *show that, but for his trial counsel's alleged errors,*
        *the results of the trial would have been different.* In
26        reaching this conclusion, we note that sufficient
        evidence supported Ruffin's conviction.     This
27        evidence included:    the testimony of Diana
        Stubenrauch, the victim, who positively identified
28        Ruffin as being on an elevator with her prior to her

wallet disappearing; a security surveillance video corroborating Mrs. Stubenrauch's testimony; the testimony of Dan Smolinksi linking Ruffin to the possession and attempted use of Mrs. Stubenrauch's credit card; and considerable other circumstantial evidence. We also note that this court considered the prejudicial impact of the jury's exposure to testimony concerning the Bellagio security surveillance video on direct appeal and determined that the issue was without merit. . . . .

#38, Ex. 110, at 5 (emphasis added)(citation footnotes omitted).

The state supreme court's decision on these claims was contrary to clearly established federal law as determined by the United States Supreme Court.

As discussed, *supra,* a petitioner seeking to establish ineffective assistance of counsel must demonstrate both deficient performance and resulting prejudice. On the prejudice prong, under *Strickland* and its progeny, a petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A reasonable probability requires a "substantial," not just a "conceivable," likelihood of a different result. *Pinholster*, 131 S.Ct. at 1403.

What a "reasonable probability" requires under *Strickland* decidedly is *not* a probability that is more probable than not. *See,e.g., Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1243 (9th Cir. 2005). In the present case, the Supreme Court of Nevada applied precisely such a more probable than not standard. The state high court required Ruffin to demonstrate that but for counsel's errors, "the results of the trial would have been different." Petitioner was not required under *Strickland*, however, to demonstrate that the result of his trial "would have been different" but for counsel's alleged errors. He instead was required to demonstrate a probability only "sufficient to undermine confidence in the outcome." The state supreme court's application of a more-probable-than-not prejudice standard rendered its decision contrary to clearly established Supreme Court precedent. *Cooper-Smith*, *supra*. This Court accordingly must review the claims of ineffective assistance of trial counsel *de novo*. *Id.*

The Court additionally would note that the state supreme court's reliance upon the sufficiency of the evidence as a basis for concluding that petitioner could not demonstrate prejudice begged the question as to many claims.

. . . . .

This Court need not consider, however, whether the

-2-

1
2
3
4

> Nevada Supreme Court's application of *Strickland* was an objectively unreasonable one, however.  The state supreme court's decision in all events was contrary to *Strickland* because the court misstated the governing standard for determining prejudice. *Cooper-Smith, supra*. As stated above, the Court thus reviews petitioner's claims of ineffective assistance of trial counsel *de novo*.

5   #66, at 37-39.

6         Respondents contend that the Court misapplied the 2005 Ninth Circuit decision in

7   *Cooper-Smith* and misread the Nevada Supreme Court's decision as applying a more-

8   probable-than-not causation standard when the state high court did not use those words.

9   Respondents contend that this Court's decision is contrary to the 2002 United States

10   Supreme Court decision in *Woodford v. Visciotti*, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d

11   279 (2002).  Respondents maintain that the *Visciotti* decision establishes that this Court

12   improperly presumed that the state supreme court misapplied *Strickland* merely "because the

13   Nevada Supreme Court only spelled-out part of the test for prejudice."[1]

14         The Court is not persuaded.

15         In *Visciotti*, the United States Supreme Court's discussion clearly establishes that the

16   California Supreme Court expressly stated the correct standard of prejudice under *Strickland*:

17
18
19
20
21
22
23
24
25

> The California Supreme Court began its analysis of the prejudice inquiry by setting forth the "reasonable probability" criterion, with a citation of the relevant passage in *Strickland*; and it proceeded to state that "[t]he question we must answer is **whether there is a reasonable probability that, but for counsel's errors and omissions**, the sentencing authority would have found that the balance of aggravating and mitigating factors did not warrant imposition of the death penalty," again with a citation of *Strickland*.  *In re Visciotti*, 14 Cal.4th, at 352, 58 Cal.Rptr.2d, at 817, 926 P.2d, at 1003 (citing *Strickland, supra*, at 696, 104 S.Ct. 2052). **Twice, the court framed its inquiry as turning on whether there was a "reasonable probability" that the sentencing jury would have reached a more favorable penalty-phase verdict**. 14 Cal.4th, at 352, 353, 58 Cal.Rptr.2d, at 817, 818, 926 P.2d, at 1003, 1004.  The following passage, moreover, was central to the California Supreme Court's analysis:

26

> "*In In re Fields,* [51 Cal.3d 1063, 275 Cal.Rptr. 384, 800 P.2d 862 (1990)] (3)27 we addressed the

27

28      [1]#68, at 2.

-3-

1
2
3
4
5
6
7
8
9
10

process by which the court assesses prejudice at the penalty phase of a capital trial at which counsel was, allegedly, incompetent in failing to present mitigating evidence: '**What kind of evidentiary showing will undermine confidence in the outcome of a penalty trial that has resulted in a death verdict?** *Strickland* (3)27 and the cases it cites offer some guidance. *United States v. Agurs*[, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)] (3)27, the first case cited by Strickland, spoke of evidence which raised a reasonable doubt, although not necessarily of such character as to create a substantial likelihood of acquittal .... *United States v. Valenzuela-Bernal*[, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982)] ..., the second case cited by *Strickland*, referred to evidence which is "material and favorable ... in ways not merely cumulative...." ' " Id., at 353-354, 58 Cal.Rptr.2d, at 818, 926 P.2d, at 1004.

11
12
13

"**Undermin[ing] confidence in the outcome**" is exactly *Strickland*'s description of what is meant by the "reasonable probability" standard.  "**A reasonable probability is a probability sufficient to undermine confidence in the outcome.**" *Strickland*, supra, at 694, 104 S.Ct. 2052.

14 537 U.S. at 22-23, 123 S.Ct. at 359 (bold emphasis added).

15 In *Visciotti*, the state supreme court stated the correct standard of prejudice not merely

16 once, but instead multiple times.  The United States Supreme Court held in *Visciotti* that the

17 federal court of appeals erred in concluding that the state supreme court's decision was

18 contrary to clearly established federal law merely because the state supreme court used a

19 shorter, less precise statement of the prejudice standard in other portions of its opinion. *See*,

20 537 U.S. at 23-24, 123 S.Ct. at 359-60.

21 In the present case, in contrast, the state supreme court did not state the correct

22 standard of prejudice prior to its application of an incorrect standard to the claims of

23 ineffective assistance of trial counsel.  The state high court rejected petitioner's claims of

24 ineffective assistance of trial counsel because "Ruffin *failed to show that, but for* his trial

25 counsel's alleged errors, the results of the trial *would have been different*."   The state

26 supreme court could not have more clearly misstated – or more clearly misapplied – the

27 governing standard.  The Nevada Supreme Court's incorrect statement of the prejudice

28 standard – without a prior statement of the standard in the opinion reflecting that the state

1  supreme court was applying the correct standard – renders the 2002 *Visciotti* decision

2  inapposite.

3        Respondents urge that *Visciotti* establishes a rule under which the state supreme court

4  is presumed to have applied the proper standard where: (1) the court cites *Strickland*; (2) the

5  court quotes language directly from *Strickland* concerning the applicable standard for

6  prejudice; and (3) cites a state law case that more fully set forth the *Strickland* standard.  As

7  discussed above, *Visciotti* did not hold that the mere citation to *Strickland* overcomes a state

8  supreme court's incorrect statement of the *Strickland* standard in its opinion.  The state court

9  in *Visciotti* properly fully stated the governing *Strickland* prejudice standard in its opinion

10  multiple times.  In this case, the Supreme Court of Nevada instead applied the wrong

11  standard.  Moreover, the state court decision to which respondents refer, *Kirksey v. State*, 112

12  Nev. 980, 923 P.3d 1102 (1996), is cited later in the order in the discussion of petitioner's

13  claim of ineffective assistance of appellate counsel, and the Supreme Court of Nevada cited

14  to a different portion of *Kirksey* than respondents now cite in their briefing.[2]   The state high

15  court's decision in this case thus arguably does not satisfy even the test advanced by

16  respondents, which in truth was never articulated in *Visciotti*.  In all events, respondents cite

17  no apposite authority establishing that a failure to apply the correct standard in the text of an

18  opinion is remedied by a citation to prior cases that do not make the same error.

19        Respondents further urge that this Court should look to the state trial court's allegedly

20  correct statement of the *Strickland* standard to overcome the state supreme court's

21  application of an incorrect standard.  Respondents rely on decisions from other contexts in

22  which a state high court adopted the reasoning of the trial court.  In this case, however, the

23  Supreme Court of Nevada neither adopted the reasoning of the trial court in this regard nor

24  rendered a summary denial that left the state district court's decision as the last reasoned

25  decision in the case.  The Nevada Supreme Court's decision instead was the last reasoned

26

27      [2]*Compare* #38, Ex. 110, at 6 n.10 *with* #68, at 5.  The *Woodford* state court decision actually cited by
the Supreme Court of Nevada in its discussion of the claim of ineffective assistance of trial counsel did not

28  fully state the *Strickland* standard.

1    decision in the case, and under established law, that is the decision to which review is

2    directed on federal habeas review.  The state supreme court's application of an incorrect

3    standard is not remedied by the alleged lack of a similar error in the trial court.

4        Respondents additionally urge that the Court should look to other published decisions

5    by the Supreme Court of Nevada properly stating and applying the *Strickland* standard.  The

6    decision under review, however, is the Nevada Supreme Court's adjudication in Ruffin's case.

7    Respondents essentially posit that so long as the state supreme court did not make the same

8    error in some other case not currently under review, the state high court's application of an

9    incorrect standard in this case should be disregarded.  Even AEDPA review is not that

10   deferential.

11       The incorrect prejudice standard applied by the Supreme Court of Nevada in the

12   present case is in substance identical to the incorrect prejudice standard applied in *Cooper-*

13   *Smith*.  In the 2005 *Cooper-Smith* decision, the last reasoned state court decision rejected the

14   claim of ineffective assistance based upon a "more probable than not" standard for

15   demonstrating prejudice.  Respondents urge that the "words 'more likely than not' or 'more

16   probable than not' simply do not appear anywhere in the Nevada Supreme Court's order."[3]

17   Respondents' argument that this standard did not require more-probable-than-not causation

18   is unpersuasive.  Requiring petitioner to show that but for the error the result would have been

19   different clearly was not requiring petitioner to show that it was less likely than not that the

20   error affected the outcome.

21       Moreover, the Court remains less than sanguine that the state supreme court's

22   application of *Strickland* was an objectively reasonable one.  *Inter alia*, responding to claims

23   that counsel should have acted to secure the exclusion of evidence with the observation that

24   the challenged evidence was sufficient to convict is circular reasoning that arguably

25   transcends ordinary appellate error.  The Court leaves that issue to another day, however, as

26   the state supreme court's decision was contrary to clearly established federal law.

27

28       [3]#68, at 2 (emphasis in original).

1    The motion for reconsideration therefore will be denied.  The evidentiary hearing will

2  proceed forward as scheduled.[4]

3    IT THEREFORE IS ORDERED that respondents' motion (#68) for reconsideration is

4  DENIED.

5    DATED:  September 6, 2011.

6

7

8    _____
   ROGER L. HUNT
9   United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

   _____

27    [4]The Court notes in passing that *Pinholster* – by its own express terms – does not categorically bar
   the holding of a federal evidentiary hearing.  *See* 131 S.Ct. at 1411 n.20.  What *Pinholster* precludes is the
   reliance on the evidence developed in federal court if the state court decision ultimately withstands deferential
28  AEDPA review.

-7-